Smothers v. Hanks.

SMOTHERS v. HANKS.

I. Per CURIAM.

1. Instructions: CONSTRUCTION OF. Instructions are not to be construed abstractly but as a whole, and according to their plain and ordinary meaning rather than to any test of hypercriticism of language.

2. Physicians: LIABILITY OF: NEGLIGENCE. The law requires of physicians and surgeons in the treatment of their patients the use of ordinary skill and diligence only, the average of that possessed by the profession as a body, and not of the thoroughly educated, only; having regard to the improvements and advanced state of the profession at the time of the treatment.

3. —— The case of *McCandless* v. *McWha*, 22 Penn. St. 261, criticised and reviewed.

II. Per Beck, Ch. J., dissenting.

4. —— The law requires the use of that skill and diligence ordinarily exercised by the thoroughly educated physicians and surgeons.

*Appeal from Mahaska Circuit Court.*

FRIDAY, JUNE 21.

ACTION to recover damages of the defendant, a practicing physician, for alleged negligent, ignorant and unskillful treatment, by him, of the plaintiff's arm, the bones of which had been fractured near the wrist. The cause was tried to a jury, and the evidence introduced tended to show that plaintiff's arm had been broken; that defendant, who held himself out as a surgeon, undertook the cure; that, by reason of defendant's negligence or ignorance, a perfect cure was not effected; that the arm, hand and fingers were crooked and stiff—perhaps permanently so, perhaps not. The jury found a verdict for plaintiff for $2,000, which, on a motion for a new trial, was reduced to $1,200, and judgment was rendered thereon, from which defendant appeals. The further facts are stated in the opinion.

*Seevers & Cutts* for the appellant.

*Liston McMillen* for the appellee.

COLE, J. — I. The first error assigned is, that " the court, in the instructions, commented on the facts, and plainly indicated to the jury what facts had been proved."

1. INSTRUCTIONS: construction of.

The tenth instruction given by the court is, in part, the basis of this alleged error. It is as follows: " If you find

for the plaintiff, he will be entitled to recover for the pain, anguish and suffering of the body and mind, which he has suffered by reason of the want of ordinary skill and care on the part of the defendant, together with a fair and reasonable compensation for the future pain, suffering and anguish which it is reasonably certain from the evidence that he will yet have to suffer; and the loss and damage which you believe, as reasonable men, he will necessarily suffer by reason of the permanent injury to his hand in its effects on his power to earn money and conduct business and improve his prospects for life." This instruction is one of a series, and follows others in which the questions of fact respecting the care and negligence of defendant, the injury to plaintiff, its causes and extent, are carefully and fairly referred to the jury for their consideration and finding. The tenth, as above set out, is then given as a rule whereby the jury should measure the damages to which the plaintiff might be entitled upon the different hypotheses of fact before referred to them for their finding. Having thus in view the whole series of instructions, it can hardly be fairly said that the court indicated to the jury what facts had been proved. When taken in connection with the other instructions given, we think the law is stated in the tenth "in such a manner as to enable a person of common understanding to know what is intended," and this is sufficient even in criminal law. Rev., § 4657. It may be true that the language of the instruction when subjected to the test of hypercriticism, may seem vulnerable to the objection made; but not so, when fairly construed and taken in its plain and ordinary meaning. There could be, of course, no objection to stating the substance of the instruction in more guarded and unmistakable language. The same, in substance, may be said of the other instructions, to which the same objection is made.

II. It is next assigned that the court erred in giving the seventh instruction, which is as follows : " If the defendant

2. PHYSICIANS: undertook, in the capacity of a surgeon, to
liability of:
negligence. treat the fractured arm of the plaintiff, he
thereby contracted to possess and employ, in the treatment
of the case, such reasonable skill and diligence as are
ordinarily exercised in the profession by thoroughly-
educated surgeons, having regard to the improvements and
advanced state of the profession at the time ; and if he has
failed in so doing, without any fault or neglect of the plain-
tiff, he is liable in damages therefor."

In our opinion this instruction does not give the true
legal standard as to the skill and diligence required.
The error consists in requiring the measure of skill and
diligence ordinarily exercised by *thoroughly educated* sur-
geons ; whereas, the true measure is that ordinarily exer-
cised in the profession by the members thereof as a body.
That is, the average of the reasonable skill and diligence
ordinarily exercised by the profession as a whole. Not
that exercised by the *thoroughly educated ;* nor yet that
exercised by the *moderately educated,* nor merely of the
*well educated,* but the *average* of the thorough, the well,
and the moderate — all, in education, skill, diligence, etc.
We do not stop to discuss critically the meaning of the
term, " thoroughly educated ; " nor is it necessary to prove
that it means " fully, completely and perfectly educated,"
or that it necessarily implies an entire and perfect knowl-
edge. It is enough that it must mean that the standard
of the skill and diligence was not the average of the whole
body of the profession, or in other words, *ordinary skill,*
but was that exercised by some defined or undefined por-
tion of the profession, or in other words *more than* mere
*ordinary skill.* Of course in determining this ordinary
skill, " regard should be had to the improvements, and
advanced state of the profession at the time " the case was
treated, for such regard is necessary in order to correctly
ascertain the true standard of ordinary skill. It is also
doubtless true that the standard of ordinary skill may

vary even in the same state, according to the greater or lesser opportunities afforded by the locality, for observation and practice, from which alone the highest degree of skill can be acquired. As to this last thought, see Shearm. & Redf. on Neg., § 436, p. 491. And as to skill and diligence generally as above stated, see id., §§ 431–443, and the cases cited in the notes. See, also, *Howard* v. *Grover*, 28 Me. 97; *Simonds* v. *Henry*, 39 id. 155; *Patten* v. *Miggin*, 51 id. 595; *Lawdon* v. *Humphrey*, 9 Conn. 209; *Reynolds* v. *Graves*, 3 Wis. 416; *Gallagher* v. *Thompson*, Wright's Rep. (Ohio) 466; *Bowman* v. *Woods*, 1 G. Greene, 441.

We are not disposed in any degree, not even in the very least, to let down or lower the true standard of professional skill or diligence, either in medicine, law, or other applied science. But we recognize the fact that this standard must be a practical and attainable one, and not one of mere theory or fancied perfection, the enforcement of which would cause much litigation, and necessarily drive from the profession a large portion of those from whose practice the largest measure of practical good is attained.

The case of *McCandless* v. *McWha*, 22 Penn. St. 261, is so often cited, and parts of the opinion by WOODWARD, J., so often quoted in text-books and cases, that we deem it proper to give it here a somewhat extended analysis. The case arose in Pittsburg, Penn., and was decided by the supreme court, 1853. The plaintiff had in some way, suffered " *an oblique comminuted fracture of the tibia and fibula* of the leg, which fracture was nearly half way from the ankle to the knee." The defendant, a regular practicing physician and surgeon, was called to treat it. The plaintiff claimed that by the want of skill and attention by defendant, the leg had become shorter than the other. The defendant denied the want of skill, and alleged that the shortening came from the improper loosening by plaintiff of the bandages and extensions, and the previous

intemperate habits of plaintiff. There was a jury trial in the court below, and the court instructed the jury "that the defendant was bound *to bring to his aid the skill necessary* for a surgeon to set the leg so as to make it straight, and of equal length with the other when healed, and if he did not, he was accountable in damages, just as a stone mason or bricklayer would be in building a wall of poor materials, and the wall fell down; or if they build a chimney, and it would smoke by reason of a want of skill in its construction, they could not only not recover pay for building, but would be accountable for damages; and, if suits were more frequently brought, we would perhaps have fewer practitioners of medicine and surgery not possessing the requisite professional skill and knowledge than we now have. But it is due to the defendant to state that, with the exception of the matter complained of in this suit, there is nothing in the evidence given to show that he is not respectable in his profession."

The opinion of a majority of the court was delivered by WOODWARD, J., and, in remarking upon the first instruction above, he says: "It is impossible to sustain this proposition. It is not true in the abstract, and if it were, it· was inapplicable to the circumstances under investigation. The implied contract of a physician or surgeon is not to cure, to restore a fractured limb to its natural perfectness, but to treat the case with diligence and skill. The fracture may be so complicated that no skill vouchsafed to man can restore original straightness and length; or the patient may, by willful disregard of the surgeon's directions, impair the effect of the best conceived measures. He deals not with insensate matter like the stone mason or bricklayer, who choose their materials and adjust them according to mathematical lines, but he has a suffering human being to treat, a nervous system to tranquilize, and a *will* to regulate and control. The evidence before us

makes this strong distinction between surgery and masonry, and shows how the judge's inapt illustration was calculated to lead away the jury from the true point of the cause.

The question was not whether the doctor had brought to the case skill enough to make the leg as straight and long as the other, but *whether he had employed such reasonable skill and diligence, as are ordinarily exercised in his profession*. For less than this he is responsible in damages; but if he be held to the measure laid down by the court below, the implied contract amounts on his part to a warranty of cure, for which there is no authority in law. * * * The only remaining error assigned (upon the other instruction) is scarcely worthy of notice. The action depended so entirely on its own circumstances, that the observation of the court as to the policy of such suits was irrelevant, and we may fairly presume harmless. But, for misdirection on the other point, the judgment is reversed, and a *venire de novo* awarded."

The precise point decided by the case is, that physicians are not accountable in damages for a failure to make a perfect cure, just as a stone-mason or bricklayer is liable for a failure to make a perfect job. What is above quoted from the opinion, is substantially all that legitimately pertains to it. But the learned judge says very much more, and some of it is not entirely consistent with that we have quoted, while some of it is. To illustrate we quote further: "We have stated the rule to be reasonable skill and diligence; by which we mean such as thoroughly educated surgeons ordinarily employ. If more than this is expected, it must be expressly stipulated for; but this much every patient has a right to demand in virtue of the implied contract which results from intrusting his case to a person holding himself out to the world as qualified to, practice this important profession." But afterward, he uses this language: "The law has no allowance for *quackery*. It demands *qualification* in the profession practiced — not

extraordinary skill, such as belongs only to a few men of rare genius and endowments, but *that degree which ordinarily characterizes the profession.* And in judging of this degree of skill, in a given case, regard is to be had to the advanced state of the profession at the time." In our opinion, in this last quoted paragraph, the learned judge re-announced the correct rule of law, the same as he had in the body of the opinion as set out above. But in the preceding quotation, he announced a very different rule, to wit: "Such reasonable skill and diligence as *thoroughly educated* surgeons ordinarily employ."

The whole case of *McCandless* v. *McWha* is a remarkable one. None of the evidence taken upon the trial in the court below was before the supreme court, except the deposition of one of the witnesses on the part of the defense, and yet, LEWIS, J., without dissenting from the opinion of WOODWARD, J., filed an extended opinion in which he discusses, the merits of the case upon the evidence in the light of a large number of medical treatises, from which he quotes and upon which he comments. But he sums up his discussion with a statement that the main question is, "Did the surgeon *exercise ordinary skill and care in his reatment of the patient?* If he did, he is not liable. If he did not, he is." While BLACK, Ch. J., delivered the following opinion: " We all concur in the law of this case. The judge in his charge fell into an error in stating the amount of skill required in the treatment of the case. We reverse for that reason. But when we decide the legal point we are done with it. We are not authority on questions of surgery. Our hands are abundantly full with questions that belong to our profession, without volunteering opinions on sciences which relate to others. I think it necessary to say this in order to prevent the court below, on a second trial, from supposing that we intend to give them any instructions on matters in which we have no jurisdiction."

The fact that we now have before us two cases in which the courts below have been led into error by quotations from Judge WOODWARD's opinion, found in the notes in different text-books, has led us to give the case this extended notice. The point decided and the law actually ruled in the case, were right beyond question. But very much of the opinions of WOODWARD and LEWIS, JJ., are outside of the case, and their observations are well calculated to mislead. It may not be out of place to remark, that a majority of this court concur with Chief Justice BLACK in his observation that "our hands are abundantly full with questions that belong to our own profession without volunteering opinions on sciences which relate to others." For the error in the instruction as before noticed the judgment is

Reversed.

BECK, Ch. J., dissenting. — I am unable to concur in the conclusion arrived at in the foregoing opinion. In my judgment, the rule there given to determine the skill and diligence to be exercised by physicians and surgeons in the practice of their respective professions, is incorrect. It is, in effect the average of the ordinary skill of the whole profession, including all grades of learning and proficiency possessed by those who may be considered as belonging to it. Stated more explicitly, it is this: The skill of all classes in the profession, the indifferent, the good and the excellent are to be considered, and the average thereof is the skill the law requires.

In my opinion, the rule cannot be supported upon reason, and I do not think that it is recognized by the authorities. I will briefly point out objections to it, which, to my mind, are insuperable.

In the first place, the standard fixed by the rule is entirely imaginary, and can have no actual existence. No physician ever possessed the skill demanded by it. He is

either above or below the standard. An *average*, a mean between the thoroughly educated, the well educated, and the moderately educated physicians, the classes into which the profession is divided by this opinion, would be neither the one class nor the other, but would constitute another class, or rather a standard for another class. In this newly created class would be found no member of the medical profession. Yet, this ideal standard, which, in fact, is the measure of no man, is applied to all. The rule cannot, therefore, be practically applied. Suppose an attempt be made to do so, and a member of the profession is asked whether a given treatment of a patient was in accord with the exercise of the skill demanded by this rule. In the first place, it would exceed the art of man to divine just the amount of skill to be possessed by one, in order to be the average surgeon or physician. Inasmuch as the witness never beheld the exercise of the precise degree of skill required, it would be impossible for him to determine either the fact or effect of its exercise. He would, therefore, be utterly unable to impart the information required.

There will be found no such difficulty, in applying a rule based upon the absolute skill and acquirements of individuals or classes of the profession. The skill of a thoroughly educated or indifferently educated surgeon, may be readily determined. So the skill of the classes to which they belong, may be known and comprehended. It would not be difficult to ascertain the degree of skill possessed by the great body of the profession — by that class which belongs to neither extreme, the thoroughly educated or the uneducated. A rule which takes as a measure, the skill of one of these classes, may be practically applied. The rule of the majority opinion, in my judgment, cannot be.

A rule recognizing as a standard that degree of skill possessed by the greatest number of the profession, or by those in extensive practice, or those educated in a certain

manner, would possess elements of certainty and practical capacity for application not inherent in a rule like the one recognized by the majority opinion, which is purely ideal. I think there can be no difficulty in deducing such a rule from reason and sound legal principle.

Another objection to the rule under consideration may be named. The standard prescribed thereby is lowered by the less skillful in the profession. These, which the foregoing opinion designates as the moderately educated, must be considered in arriving at the *average* which is adopted as the measure. Their want of skill diminishes the standard arrived at, by *averaging* them along with the thoroughly educated.

In my opinion, the rule of the instruction condemned by the majority of this court is correct. I will consider it briefly. It requires a surgeon to exercise such skill as is ordinarily possessed by "thoroughly educated surgeons, having regard to the improvements and advanced state of the profession." It is well first to determine the import of this language. A "thoroughly educated surgeon" is one fully and completely instructed in his profession. The words relate to the extent of attainments in the principles and theories of the profession, and imply that he, of whom they are spoken, is familiar with the science in all its departments. They also imply proficiency in the cognate sciences, without which the profession could not be successfully practised. In the fundamental and practical principles of all these he must be fully instructed. The term "thoroughly educated" does not apply to knowledge possessed of matters outside of the principles of the profession, to mental ability and force, nor to other things which unite in men of great superiority. The education required must be in the profession in its present state, with all its improvements, the fruits of experience and progress — in the science of to-day, not of the past. The rule of the instruction demands the exercise of such skill, as is ordin-

arily possessed by those whose attainments are of the character just indicated. The term "skill," here used, applies to knowledge of the science, and readiness and dexterity in its application to practical purposes. The instruction exacts of the surgeon the exercise of such knowledge of his profession, and dexterity in its application, as is ordinarily possessed by men "thoroughly educated in" — familiar with, the principles of the science in all its departments. The standard of skill, here fixed, is that of those whose knowledge covers the whole field of the science. It prescribes no test drawn from experience and practice.

The instruction, in my opinion, is correct. It recognizes the progress of the profession, and what is true in all other professions as well as surgery, that there can be no success attending one who pursues it, unless he keeps up with the progress the science is continually making. Those requiring the surgeon's aid have a right to demand all the benefits which the science of to-day can give them; they do not employ one whose profession is of the past. In no department of human knowledge has there been such progress within a comparatively recent period, as in the healing art. For centuries the science of medicine was stationary. Twelve hundred years after Galen it had made no progress; his works, during the whole of that period, were undisputed authority upon all questions. During the last two hundred years, and especially in the present century, the science has made constant and wonderful progress. The discoveries made within our own days, within the time of many living physicians, have completely overthrown old pathological theories, and required the abandonment of remedies before universally used and approved. Less than forty years ago venesection was a common practice of the profession in the treatment of fevers. Now it is seldom resorted to, in such diseases. The pharmaceutical chemists, within a very recent period, have discovered many invaluable remedial agents. The

ophthalmoscope has revealed the fact that the conjectures concerning many diseases of the eye, before uniformly received by the profession, were wrong. Every day brings new discoveries of remedies, or important and useful suggestions relating to the treatment of diseases. A physician, whose practice has extended through a few years only, has been compelled, in following the progress of his profession, to discard many old theories and adopt new ones. In surgery the progress of the present day is even more remarkable. The improvements in this science, dur ing the present century, more than equal the progress made in all prior time. The cunning instruments recently invented, the new anæsthetic agents brought into use, the increased knowledge of the human body and its functions, etc., etc., enable the surgeon now to effect cures that, in past ages, would have been considered possible only by the interposition of miraculous power. No one can suppose the goal of perfection has been reached, and that no new thing in the dominion of medicine and surgery can be discovered. The events of the present demonstrate that, at this very day, the progress in these sciences is at an accelerated rate. Is not diseased and afflicted humanity entitled to all the benefits of this progress? Dare we say that a remedy of yesterday is sufficient, when the progress and experience of to-day have taught the profession that there is something better? May we pronounce surgical operations, done in accordance with the canon of the profession in force fifty years ago, without the instruments and efficient anæsthetics of to-day, skillfully performed? Are we prepared to approve a practice which has been discarded fifty years? If not, can we announce as a rule of the law that a physician or surgeon may be five years, one year, or one month behind the progress of his profession? The law, progressing with this age, will hold him inexcusable, who, in any avocation of life, is not fully up to the standard of the present. This doctrine must be true of the

members of a profession to whose skill is committed the lives of the people.

It will be remembered that the instruction under consideration does not require of the surgeon the highest skill, nor hold him liable for a failure to exercise the highest ability. He is responsible in case he has not prepared himself for the discharge of the duties of his profession, by fully acquiring theoretical knowledge of its principles as they are developed in its present advanced state. Nothing less can be required without awarding a premium upon ignorance, and placing an obstacle in the way of progress.

But it is said that the instruction is erroneous, because it places the surgeon of the frontier village on a level with the experienced practitioner of the cities and seats of learning. As we have seen, tests of experience and practice are not within the scope of the instruction. But, it is shown, that the frontier surgeon, as to theoretical knowledge, is brought by the side of his professional brother of the city. And why should he not stand there ? He may in vain plead, or rather it may in vain be urged in his behalf, for, I know, frontier men of no profession will seek such protection, that his opportunities for the acquisition of professional knowledge are more limited than those of a city. In this age of books, professional periodicals, and mails, the position wants the support of facts. We may safely say that no respectable surgeon, wherever he may be, is uninformed of the progress and discoveries in his profession.

The foregoing views are not without the support of authority. *McCandless* v. *McWha*, 22 Penn. St. 261; *Long* v. *Morrison*, 14 Ind. 595.

It is my opinion that the judgment of the district court ought to be

Affirmed.