EARL H. BIGNEY vs. J. LEROY FISHER.

PROVIDENCE—SEPTEMBER 27, 1904.

PRESENT: Tillinghast, Douglas, and Blodgett, JJ.

(1) *Physicians and Surgeons. Malpractice. Evidence. Experts.*

In an action against a physician, for malpractice, the question whether the defendant used proper skill and care in his treatment of the case is to be determined by the testimony of experts in the science of medicine and surgery.

(2) *Physicians and Surgeons. Malpractice. Degree of Care Required. Implied Contracts.*

The implied contract of a physician or surgeon is, not to cure, but to treat the case with that degree of diligence and skill which are ordinarily possessed by the average of the members of the profession in good standing in similar localities, regard being had to the state of the profession at the time.

TRESPASS ON THE CASE for malpractice. Heard on petition of defendant for new trial, and granted.

(1) TILLINGHAST, J. The verdict in this case can not be sustained. Whether the defendant used proper skill and care in setting the broken bone in the plaintiff's leg, and in his sub-, sequent professional treatment of the case, were necessarily questions to be determined by the testimony of experts in the science of medicine and surgery. *Barker* v. *Lane*, 23 R. I. 224. And the very strong preponderance of the testimony of the experts who were produced as witnesses in the case is to the effect that the treatment adopted by the defendant was both skillful and proper, and that the result was as favorable as could be expected in view of the nature and character of the injury.

A slight shortening of the leg which was broken is practically all the permanent injury of which the plaintiff complains, and quite a number of very eminent and well-known surgeons in the State, amongst whom were Dr. John W. Mitchell, Dr. Robert F. Noyes, Dr. Frank E. Peckham, Dr. John W. Keefe, and Dr. G. Edward Buxton, were called as witnesses by the defendant, and testified to the effect that such a result is

practically inevitable under the conditions which appeared in this case. That in oblique fractures of the thigh bone— which this was—a shortening of the leg is ordinarily, if not always, to be expected.

It is true the plaintiff produced some testimony tending to show that the defendant did not at first fully comprehend the nature and locality of the injury, and also that the treatment adopted by him was not altogether of the best or most approved sort. And Dr. Jerome B. Greene, called by the plaintiff as an expert, testified that if the fracture had been properly treated, he did not think there would have been any shortening of the leg. That he sometimes got shortening in adults but never in children. Dr. Arthur H. Wood also testified to the effect that there was no occasion for any shortening of the leg, or at any rate for so much as was found to exist in this case. He also testified that when he examined the patient the defendant was treating him for an injury to the knee, and had not discovered the fracture of the thigh bone.

The great weight of the testimony, however, is in favor of the defendant upon all the points involved in the case; and hence the verdict was clearly against the evidence.

(2) "The implied contract of a physician or surgeon is not to cure—to restore a fractured limb to its natural perfectness"— *McCandless* v. *McWha*, 22 Pa. St. 261; but to treat the case with that degree of diligence and skill which are ordinarily possessed by the average of the members of the profession in good standing, in similar localities, regard being always had to the state of the medical profession at the time. If more than this is expected, it must be expressly stipulated for. S. & R. Neg. 5th ed. § 605; Am. & Eng. Ency. L. vol. 22, revised ed. 799–801; *Smothers* v. *Hanks*, 34 Iowa, 286; *Almond* v. *Nugent*, ib. 300; *Small* v. *Howard*, 128 Mass. 131. In short, a physician or surgeon must apply the skill and learning which belong to his profession. *Higgins* v. *McCabe*, 126 Mass. 13. And if he do this he discharges his full liability.

The law relating to malpractice is well stated in the late case of *Pike* v. *Honsinger*, 155 N. Y. 201.

In that case Vann, J., in delivering the opinion of the court,

said: "A physician and surgeon, by taking charge of the case, impliedly represents that he possesses, and the law places upon him the duty of possessing, that reasonable degree of learning and skill that is ordinarily possessed by physicians and surgeons in the locality where he practices, and which is ordinarily regarded by those conversant with the employment as necessary to qualify him to engage in the business of practicing medicine and surgery. Upon consenting to treat a patient, it becomes his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning to accomplish the purpose for which he was employed. He is under the further obligation to use his best judgment in exercising his skill and applying his knowledge. The law holds him liable for an injury to his patient resulting from want of the requisite knowledge and skill, or the omission to exercise reasonable care, or the failure to use his best judgment. The rule in relation to learning and skill does not require the surgeon to possess that extraordinary learning and skill which belong only to a few men of rare endowments, but such as is possessed by the average member of the medical profession in good standing. Still, he is bound to keep abreast of the times, and a departure from approved methods in general use, if it injures the patient, will render him liable, however good his intentions may have been. . . . His implied engagement with his patient does not guarantee a good result, but he promises by implication to use the skill and learning of the average physician, to exercise reasonable care and to exert his best judgment in the effort to bring about a good result."

Under the evidence submitted in this case we think it is clear that the defendant possessed all of the qualifications called for by the rule as thus stated, that he used his best judgment in the case, and that he exercised at least an ordinary, if not, indeed, a high, degree of care and skill in his professional treatment of the plaintiff.

It therefore follows that the verdict of the jury was clearly wrong, and hence it is set aside and a new trial granted.

*F. P. Owen,* for plaintiff.

*James T. Egan,* for defendant.