Kayla BUJA et al.

v.

Howard W. MORNINGSTAR, M.D., et al.

No. 96–76–M.P.

Supreme Court of Rhode Island.

Jan. 23, 1997.

David Oliveira, Providence, for plaintiff.

Michael T. Sullivan, William H. Jestings, Stephen P. Harter, Adam C. Robitaille, David W. Carroll, William White, Providence, for Defendant.

Mark S. Mandell, Allan W. Fung, Providence, Amicus Curiae.

## OPINION

PER CURIAM.

This case came before the Court on November 6, 1996, pursuant to an order directing the parties to appear and show cause why the issues raised by Kayla Buja's petition for certiorari filed after a trial justice of the Superior Court granted a motion in limine precluding the petitioner's expert witness from testifying should not be summarily decided.

After hearing the arguments of counsel and considering the memoranda submitted by the parties, we are of the opinion that cause has not been shown. The issues raised in the petition will be decided at this time.

In June of 1990, Brenda and Brian Buja (the Bujas) learned that Brenda Buja (Brenda) was pregnant. Brenda then enrolled in a clinic at Memorial Hospital where she received prenatal treatment from Linda Lacerte, M.D. (Dr. Lacerte), a doctor who at the time was a resident in family practice. On December 14, 1990, Dr. Lacerte and Howard W. Morningstar, M.D. (Dr. Morningstar), also a resident in family practice, managed Brenda's labor. Lawrence Culpepper, M.D. (Dr. Culpepper), supervised the two residents, but he left the hospital shortly before Brenda gave birth. At approximately 6:45 p.m., the doctor who relieved Dr. Culpepper delivered Kayla Joy Buja (Kayla) by emergency vacuum extraction. Doctors Lacerte and Morningstar also attended the delivery. Kayla was later diagnosed with cerebral palsy, spastic quadriplegia, and mental retardation, all of which resulted from oxygen deprivation that occurred at some point prior to delivery.

In support of their allegations of medical malpractice, the Bujas attempted to present a witness who was board certified in obstetrics and who had extensive knowledge, skill, experience, training, and education in that field. The defendants below filed a motion in limine to preclude the Bujas' expert from testifying. They posit that, as an obstetrician, the Bujas' expert was not qualified to testify concerning the standard of care required of a family practitioner who, on some occasions, delivers a child. The trial justice granted the motion in limine and stated that

> "to the extent there's an allegation of bad medicine against a family practitioner, the expert who has to come in and say it has to be expert in family practice. Now, to the extent that bad medicine occurs in OB–GYN, you get a family practitioner to come in and say to the extent that family practitioner was practicing OB–GYN, it was bad medicine."

We conclude that the trial justice's decision was erroneous and was not in accord with our decision in *Marshall v. Medical Associates of Rhode Island, Inc.,* 677 A.2d 425 (R.I.1996).

*Marshall* involved a medical malpractice claim for the allegedly negligent treatment of an animal bite wound. The defendant in that case was an emergency room physician and an internist and the plaintiff's proposed expert was board certified in pediatrics and family medicine. The proposed expert "had routinely treated animal-bite wounds in his practice, had lectured on that topic at several prestigious medical schools, and had encountered 'hundreds' of these wounds during his many years as a physician." *Id.* at 427. In reversing the trial justice's decision to exclude the expert witness's testimony, we said that

> "[w]e begin and effectively end our consideration by restating the language of § 9–19–41: to be qualified as an expert and thus be entitled to give expert testimony, one should have 'knowledge, skill, experience, training or education * * * in the field of the alleged malpractice.' Here, the claimed malpractice involves the treatment

of an animal-bite wound. There is nothing in the statute that suggests that to qualify as an expert witness, the testifying doctor must be board certified or otherwise have training or experience in the same medical specialty as the defendant-physician, provided the proposed expert otherwise has knowledge, skill, experience, or education in the same field as the alleged malpractice. Thus, a doctor skilled in pediatrics and family medicine with experience in treating animal-bite wounds of the kind suffered by this plaintiff need not be board certified in emergency or internal medicine to testify about the pertinent standard of care in treating such wounds and to opine whether the defendant-physician met that standard. * * * However relevant such matters may be to the weight given by the factfinder to the expert's opinion, they should not bar such testimony *ab initio*." 677 A.2d at 426–27.

As in *Marshall*, the proposed expert here did not practice in the same specialty as the defendants, but he clearly did have the necessary prerequisite "knowledge, skill, experience, training or education * * * in the field of the alleged malpractice," as required by G.L.1956 § 9–19–41 and *Marshall*. The defendants' alleged malpractice occurred in the field of obstetrics, a field in which the proposed expert was eminently qualified. There is nothing in the plain and unambiguous language of § 9–19–41 that requires that before an expert testifies in a medical malpractice case, he or she must not only be an expert in the field where the alleged malpractice occurred, but must also practice in the same specialty as the defendant. Such an additional requirement is unnecessary and is in contravention to the General Assembly's clear intentions, as expressed in § 9–19–41.

For the foregoing reasons, the petition for certiorari is granted, the order granting the defendants' motion in limine is quashed, and the papers in this case are remanded to the Superior Court with our decision endorsed thereon for further proceedings in accordance with this opinion.