Joanne SHEELEY et al.

v.

**MEMORIAL HOSPITAL et al.**

No. 95–602–Appeal.

Supreme Court of Rhode Island.

April 8, 1998.

James T. McCormick, for Plaintiff.

Colleen J. Pelletier, William F. White, Mark C. Hadden, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case is before the court on the appeal of Joanne Sheeley (Sheeley) from the directed verdict entered against her in the underlying medical malpractice action. Specifically Sheeley asserts that the trial justice erred in excluding the testimony of her expert witness, which exclusion resulted in the entry of the directed verdict.[1] For the reasons set

---

1. Pursuant to Rule 50 of the Superior Court Rules of Civil Procedure, as amended in 1995,

forth below, we hold that the trial justice erred in excluding the testimony and reverse the judgment from which the appeal was taken. Furthermore, we take this opportunity to reexamine the proper standard of care to be applied in medical malpractice cases and, in so doing, abandon the "similar locality" rule, which previously governed the admissibility of expert testimony in such actions. The facts insofar as are pertinent to this appeal are as follows.

On May 19, 1987, Sheeley delivered a healthy child at Memorial Hospital (hospital) in Pawtucket, Rhode Island. At the time of the birth Sheeley was under the care of Mary Ryder, M.D. (Dr. Ryder), then a second-year family practice resident. Brian Jack, M.D. (Dr. Jack), was the faculty member responsible for the supervision of Dr. Ryder.

In conjunction with the delivery process Dr. Ryder performed an episiotomy on Sheeley. This procedure entails a cut into the perineum of the mother, the purpose being to prevent tearing during the delivery. After the baby had been delivered, Dr. Ryder performed a repair of the episiotomy, stitching the incision previously made into the perineum.

After her discharge from the hospital Sheeley developed complications in the area in which the episiotomy had been performed and ultimately developed a rectovaginal fistula. This condition, which consists of an opening between the vagina and the rectum, required corrective surgery. Notwithstanding the surgery, however, Sheeley continued to experience pain and discomfort at the site of the episiotomy. Sheeley, together with her husband Mark Sheeley, then filed suit against the hospital, Dr. Ryder, and Dr. Jack (collectively defendants), alleging that defendants were negligent in performing the epi-

siotomy incision and repairing the same properly.[2]

At the trial on the malpractice action, Sheeley sought to introduce the expert medical testimony of Stanley D. Leslie, M.D. (Dr. Leslie), a board certified obstetrician/gynecologist (OB/GYN). Doctor Leslie planned to testify about Dr. Ryder's alleged malpractice and the applicable standard of care as it relates to the performance of an episiotomy. The defendants objected and filed a motion in limine to exclude the testimony, arguing that Dr. Leslie, as an OB/GYN, was not qualified under G.L.1956 § 9–19–41[3] to testify against a family practice resident who was performing obstetric and gynecological care. A hearing on the motion was conducted, at which time it was disclosed that Dr. Leslie had been board certified in obstetrics and gynecology since 1961 and recertified in 1979. Doctor Leslie testified that board certification represents a level of achievement of skill and knowledge as established by a national standard in which the standard of care is uniform throughout the medical specialty. Doctor Leslie is currently a clinical professor of obstetrics and gynecology at the Hill–Science Center, State University, College of Medicine in Syracuse. He is a member of the New York Statewide Professional Standards Review Council, which reviews disputes between doctors and hospitals regarding diagnosis and management, and the Credentials and Certification Committee at the Crouse–Irving Hospital, where his responsibilities include drafting standards for family practice physicians. It was further revealed that Dr. Leslie has in the course of his career delivered approximately 4,000 babies and that even though he has been retired from the practice of obstetrics since 1975, he has maintained his familiarity with

motions for directed verdict are now designated as motions for judgment as a matter of law.

**2.** Mark Sheeley, who has since been divorced from Joanne, is no longer a party to the lawsuit. The complaint against Dr. Jack has been dismissed.

**3.** General Laws 1956 § 9–19–41 states:

"In any legal action based upon a cause of action arising on or after January 1, 1987, for

personal injury or wrongful death filed against a licensed physician, hospital, clinic, health maintenance organization, professional service corporation providing health care services, dentists or dental hygienist based on professional negligence, only those persons who by knowledge, skill, experience, training or education qualify as experts in the field of the alleged malpractice shall be permitted to give expert testimony as to the alleged malpractice."

the standards and practices in the field of obstetrics through weekly conferences, active obstetric work, professorial responsibilities, and continuing education.

Nevertheless, relying on *Soares v. Vestal,* 632 A.2d 647 (R.I.1993), defendants maintained that § 9–19–41 requires a testifying expert to be in the same medical field as the defendant physician. In *Soares* this court upheld the trial justice's decision to exclude the testimony of the plaintiff's expert witness in a situation in which the expert was board certified in neurology and internal medicine, and the underlying malpractice action involved a family practitioner performing emergency medicine. 632 A.2d at 648. Agreeing that *Soares* was determinative, the trial justice here granted defendants' motion, stating: "I fail to see where this case is distinguishable from *Soares.* I don't quarrel with the doctor's background and qualifications. I think he's the inappropriate expert to testify in this case." Sheeley did not have any other experts prepared to testify, nor was she able to procure one within the two-day period allowed by the trial justice. Consequently defendants' motion for a directed verdict was granted. This appeal ensued.

On appeal Sheeley argues that the trial justice's ruling constitutes an abuse of discretion and is clearly wrong because Dr. Leslie was amply qualified to testify concerning the alleged malpractice. The defendants respond by arguing that Sheeley's appeal should be summarily dismissed for her failure to make an adequate offer of proof. Furthermore defendants assert that Sheeley's expert is not competent to offer expert testimony on the appropriate standard of care because he has more specialized training than Dr. Ryder and because he lacks any recent experience in providing obstetric care.

■ At the outset we note that there is no merit to defendants' contention that Sheeley's failure to make an offer of proof precludes this court from reviewing the trial justice's decision. Rule 103(a)(2) of the Rhode Island Rules of Evidence clearly states that in cases in which the ruling appealed from is one excluding evidence, "the substance of the evidence [had to be] made known to the court by offer or was apparent

from the context within which questions were asked" before its exclusion can serve as a basis of error. (Emphasis added.) If, however, the nature of the evidence offered clearly describes the relevance and competence of the offered evidence, no such offer of proof is necessary. *See Hudson v. Napolitano,* 575 A.2d 187, 188–89 (R.I.1990). In a medical malpractice case expert testimony is an essential requirement in proving the standard of care applicable to the defendant, "unless the lack of care is so obvious as to be within the layman's common knowledge." *Richardson v. Fuchs,* 523 A.2d 445, 448 (R.I. 1987). Accordingly we are of the opinion that in this instance, the nature of the evidence offered clearly evinces its relevance and competence such that an offer of proof was not necessary. That said, we turn to the specific issue on appeal.

■ "The determination of the competency of an expert witness to testify is within the discretion of the trial justice." *Id.* This court will not disturb that decision in the absence of clear error or abuse. *Id.* In fairness to the trial justice, we note that in making her determination with respect to the admissibility of the expert's testimony, she was without the benefit of our decisions in *Marshall v. Medical Associates of Rhode Island, Inc.,* 677 A.2d 425 (R.I.1996), and more importantly *Buja v. Morningstar,* 688 A.2d 817 (R.I.1997), which have distinguished *Soares* and limited its holding to situations in which the physician-expert lacks knowledge, skill, experience, or education in the same medical field as the alleged malpractice. Nevertheless, after a review of these cases, we find it clear that the trial justice did in fact abuse her discretion and commit reversible error in excluding the testimony of Dr. Leslie.

In *Buja* the plaintiffs brought a medical malpractice action against their family practitioners when their child suffered severe medical complications, including cerebral palsy and mental retardation, after having been deprived of oxygen just prior to birth. *Buja,* 688 A.2d at 818. At trial, the plaintiffs sought to introduce testimony of a board certified obstetrician. The trial justice, however, excluded the testimony and stated that

testimony concerning the standard of care required of a family practitioner practicing obstetrics had to be introduced by an expert in family medicine, not an expert in OB/GYN. *Id.* Relying on our previous holding in *Marshall*, this court reversed the trial justice and stated that even though the proposed expert did not practice in the same specialty as the defendants, he clearly had the prerequisite "knowledge, skill, experience, training or education * * * in the field of the alleged malpractice." *Id.* at 819 (quoting § 9–19–41 and citing *Marshall*, 677 A.2d at 427). The *Buja* court held that nothing in the language of § 9–19–41 requires the expert to practice in the same specialty as the defendant. 688 A.2d at 819. "Such an additional requirement is unnecessary and is in contravention to the General Assembly's clear intentions, as expressed in § 9–19–41." 688 A.2d at 819. In view of this holding and the striking factual similarities of the instant matter to *Buja*, there can be little doubt that we must reverse the decision of the trial justice and remand the case for a new trial.

Yet in spite of our holdings in *Buja* and *Marshall*, defendants continue to insist that Dr. Leslie is not qualified to testify. In essence defendants argue that Dr. Leslie is overqualified, stating that a board certified OB/GYN does not possess the same knowledge, skill, experience, training, or education as a second-year family practice resident performing obstetrics in Rhode Island. Furthermore defendants argue that because Dr. Leslie has not actually practiced obstetrics since 1975, his experience in providing obstetrical care is "clearly outdated" and he is therefore not competent to testify concerning the appropriate standard of care as it applied to the performance of an episiotomy and the repair of the same—even while they acknowledge that the standard of care relative to the procedures involved in the alleged malpractice have changed little over the last thirty years. Finally defendants assert that pursuant to the limitations of the "similar locality" rule, Dr. Leslie must be disqualified because he lacks any direct knowledge about the applicable standard of care for a family practice resident providing obstetric care in Rhode Island. The defendants suggest that Dr. Leslie, although he has attended national conferences and studied medical journals and treatises in addition to his national certification, is not qualified to testify about the applicable *local* standard of care. In light of these arguments and with a view toward preventing any further confusion regarding the necessary qualifications of an expert testifying about the proper standard of care in medical malpractice actions, we take this opportunity to revisit our position on the appropriate standard of care.

For over three-quarters of a century this court has subscribed to the principle "that when a physician undertakes to treat or diagnose a patient, he or she is under a duty to exercise 'the same degree of diligence and skill which is commonly possessed by other members of the profession who are engaged in the same type of practice in similar localities having due regard for the state of scientific knowledge at the time of treatment.'" *DiFranco v. Klein*, 657 A.2d 145, 148 (R.I. 1995); *see also Schenck v. Roger Williams General Hospital*, 119 R.I. 510, 515, 382 A.2d 514, 517 (1977); *Marshall v. Tomaselli*, 118 R.I. 190, 196, 372 A.2d 1280, 1284 (1977); *Wilkinson v. Vesey*, 110 R.I. 606, 613, 295 A.2d 676, 682 (1972); *Bigney v. Fisher*, 26 R.I. 402, 403, 59 A. 72, 72 (1904). This "same or similar locality" rule is a somewhat expanded version of the "strict locality" rule, which requires that the expert testifying be from the same community as the defendant. *See Shilkret v. Annapolis Emergency Hospital Association*, 276 Md. 187, 349 A.2d 245, 248 (1975); *see, e.g., Moon v. United States*, 512 F.Supp. 140, 144 (D.Nev.1981); *Hoagland v. Kamp*, 155 A.D.2d 148, 552 N.Y.S.2d 978, 979 (1990). The rationale underlying the development of the "strict locality" rule was a recognition that opportunities, experience, and conditions may differ between densely and sparsely populated communities. *See Shilkret*, 349 A.2d at 248–49; 61 Am. Jur.2d, *Physicians, Surgeons and Other Healers*, § 218 (1981).

This restrictive rule, however, soon came under attack in that it legitimized a low standard of care in certain smaller communities and that it also failed to address or to compensate for the potential so-called conspiracy of silence in a plaintiff's locality that

would preclude any possibility of obtaining expert testimony. *See Shilkret,* 349 A.2d at 249. Furthermore, as this court noted in *Wilkinson,* the locality rule is somewhat of an anachronism in view of "[m]odern systems of transportation and communication." *Wilkinson,* 110 R.I. at 613 n. 5, 295 A.2d at 682 n. 5. Thus many jurisdictions, including our own, adopted the "same or similar locality" rule, which allows for experts from similarly situated communities to testify concerning the appropriate standard of care. *Id.; see, e.g., Portillo v. United States,* 816 F.Supp. 444, 446 (W.D.Tex.1993); *Priest v. Lindig,* 583 P.2d 173, 176 (Alaska 1978); *Tucker v. Meis,* 127 N.C.App. 197, 487 S.E.2d 827, 829 (1997). Nevertheless, even with this somewhat expanded view, the medical malpractice bar has continually urged a narrow application of the rule, arguing the need for similar, if not identical, education, training, and experience. *See Buja,* 688 A.2d at 818 (defense counsel argued obstetrician not qualified to testify concerning standard of care required of family practitioner performing obstetrical procedures); *Marshall,* 677 A.2d at 426–27 (defense counsel argued physician skilled in pediatrics and family medicine not qualified to testify against physician certified in emergency and internal medicine when the alleged malpractice concerned treatment of animal bite). The obvious result of such an application, however, is to reduce the pool of qualified experts to its lowest common denominator. This is a consequence that we have never intended.

 The appropriate standard of care to be utilized in any given procedure should not be compartmentalized by a physician's area of professional specialization or certification. On the contrary, we believe the focus in any medical malpractice case should be the procedure performed and the question of whether it was executed in conformity with the recognized standard of care, the primary concern being whether the treatment was administered in a reasonable manner. Any doctor with knowledge of or familiarity with the procedure, acquired through experience, observation, association, or education, is competent to testify concerning the requisite standard of care and whether the care in any given case deviated from that standard. The

resources available to a physician, his or her specific area of practice, or the length of time he or she has been practicing are all issues that should be considered by the trial justice in making his or her decision regarding the qualification of an expert. No one issue, however, should be determinative. Furthermore, except in extreme cases, a witness who has obtained board certification in a particular specialty related to the procedure in question, especially when that board certification reflects a national standard of training and qualification, should be presumptively qualified to render an opinion. *See Shilkret,* 349 A.2d at 253; *see also Cheek v. Domingo,* 628 F.Supp. 149, 152 (D.Virgin Islands 1986) (holding specialist may testify regarding standard of care of general practitioner provided proposed witness possesses requisite knowledge).

This court is of the opinion that whatever geographical impediments may previously have justified the need for a "similar locality" analysis are no longer applicable in view of the present-day realities of the medical profession. As the *Shilkret* court observed:

"The modern physician bears little resemblance to his predecessors. As we have indicated at length, the medical schools of yesterday could not possibly compare with the accredited institutions of today, many of which are associated with teaching hospitals. But the contrast merely begins at that point in the medical career: vastly superior postgraduate training, the dynamic impact of modern communications and transportation, the proliferation of medical literature, frequent seminars and conferences on a variety of professional subjects, and the growing availability of modern clinical facilities are but some of the developments in the medical profession which combine to produce contemporary standards that are not only much higher than they were just a few short years ago, but are also national in scope.

"In sum, the traditional locality rules no longer fit the present-day medical malpractice case." *Shilkret,* 349 A.2d at 252.

We agree. Furthermore, we note that in enacting § 9–19–41, the Legislature failed to

employ any reference to the "similar locality" rule. We conclude that this omission was deliberate and constitutes a recognition of the national approach to the delivery of medical services, especially in the urban centers of this country, of which Rhode Island is certainly one.

■ Accordingly we join the growing number of jurisdictions that have repudiated the "same or similar" communities test in favor of a national standard and hold that a physician is under a duty to use the degree of care and skill that is expected of a reasonably competent practitioner in the same class to which he or she belongs, acting in the same or similar circumstances.[4] In this case the alleged malpractice occurred in the field of obstetrics and involved a procedure and attendant standard of care that has remained constant for over thirty years. Doctor Leslie, as a board certified OB/GYN with over thirty years of experience, a clinical professor of obstetrics and gynecology at a major New York hospital, and a member of the New York Statewide Professional Standards Review Council, is undoubtedly qualified to testify regarding the appropriate standard of care.

For the foregoing reasons the plaintiff's appeal is sustained, and the judgment appealed from is reversed. The papers in the case are remanded to the Superior Court with our decision endorsed thereon for a new trial in accordance with this opinion.

---

4. *See Shilkret v. Annapolis Emergency Hospital Association,* 276 Md. 187, 349 A.2d 245, 253 (1975); *see also Parker v. Collins,* 605 So.2d 824, 826 (Ala.1992); *Capitol Hill Hospital v. Jones,* 532 A.2d 89, 94 (D.C.App.1987); *Williams v. Ricks,* 152 Ga.App. 555, 263 S.E.2d 457, 458 (1979); *Advincula v. United Blood Services,* 176 Ill.2d 1, 223 Ill.Dec. 1, 12, 678 N.E.2d 1009, 1020 (1996); *Vergara v. Doan,* 593 N.E.2d 185, 187 (Ind.1992); *Speed v. State,* 240 N.W.2d 901, 908 (Iowa 1976); *Blair v. Eblen,* 461 S.W.2d 370, 373 (Ky.Ct.App.1970); *Josselyn v. Dearborn,* 143 Me. 328, 62 A.2d 174, 179 (1948); *Stepakoff v. Kantar,* 393 Mass. 836, 473 N.E.2d 1131, 1135 (1985); *Hall v. Hilbun,* 466 So.2d 856, 873 (Miss.1985); *Ladish v. Gordon,* 879 S.W.2d 623, 628 (Mo.Ct.App.1994); *Wilburn v. Cleveland Psychiatric Institute,* 1998 WL 53936 at 2 (Ohio Ct.App.1998); *Spencer v. Seikel,* 742 P.2d 1126, 1128 (Okla.1987); *King v. Williams,* 276 S.C. 478, 279 S.E.2d 618, 620 (1981); *Shamburger v. Behrens,* 418 N.W.2d 299, 306 (S.D.1988); *Pederson v. Dumouchel,* 72 Wash.2d 73, 431 P.2d 973, 978 (1967); *Paintiff v. Parkersburg,* 176 W.Va. 469, 345 S.E.2d 564, 565 (1986); *Shier v. Freedman,* 58 Wis.2d 269, 206 N.W.2d 166, 174 (1973); *Roybal v. Bell,* 778 P.2d 108, 112 (Wyo. 1989).