MARTIN KARASIK, Individually and as Administrator of the Estate of GAYLE KARASIK, Deceased, Appellant, v ETTA BIRD et al., Respondents.

First Department, January 12, 1984

APPEARANCES OF COUNSEL

*Michael Mantell* for appellant.

*Barbara Cass* of counsel (*Leonard Koerner* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

OPINION OF THE COURT

ALEXANDER, J.

In this wrongful death action, based upon the alleged medical malpractice of the defendants, the plaintiff-appellant Martin Karasik, widower and administrator of the estate of Gayle Karasik, the decedent, seeks a new trial, contending that the jury's determination that the defendant Etta Bird was not guilty of medical malpractice is against the weight of the credible evidence; that the court erred in refusing to allow the plaintiff's expert pharmacologist to testify as to the effect of chemical drugs prescribed

by the defendant Bird for the decedent and whether these chemical drugs were a proximate cause of the decedent's death. Appellant also contends that it was reversible error to permit defendant's counsel to read to the jury, during summation, a report of the decedent's life history that had been prepared by the decedent and given to the defendant Bird during the course of decedent's treatment. Appellant contends that this report was highly inflammatory and unduly prejudicial and was read for the sole purpose of inflaming the jury and evoking their sympathy for the defendant Bird and their antipathy toward the decedent. For the reasons herein set forth, we reverse and order a new trial.

The decedent, Gayle Karasik, a 28-year-old mother who is survived by the plaintiff herein and a 3-year-old infant died as a result of fatty metamorphosis of the liver. The trial evidence revealed that the decedent was seriously mentally disturbed, with a history of serious drug and alcohol abuse, apparently growing out of a tragically disturbed background that led to a myriad of problems in her life, including adultery, attempted suicide, marital discord and the like. She came under treatment by the defendant Etta Bird in March of 1973, first as a private patient and then as an outpatient of the clinic at Kings County Hospital where Bird was employed as a psychiatrist. Over the 14 months of the treatment of the decedent, Bird repeatedly prescribed multiple antidepressant, addictive drugs, a course of treatment called "polypharmacy". The evidence established that these drugs were prescribed interchangeably and cumulatively, without any control or consideration of the potential for abuse by a known drug abuser. Bird either failed to diagnose drug abuse as one of decedent's problems or if diagnosed, failed to record such diagnosis. She also failed to diagnose decedent's substantial weight gain, apparently resulting from the drugs prescribed for her and, either failed to note or ignored the marked deterioration of decedent's mental and physical condition manifested by constant drowsiness with long bouts of sleep, visual hallucinations and loss of sphincter control which normally is associated with brain damage. Despite these symptoms, the defendant did not conduct

physical and neurological examinations of the decedent, nor assure that they were conducted, while continuing nevertheless to prescribe the various antidepressant drugs. Plaintiff's experts testified that these tests, if conducted would have indicated the seriousness of the decedent's condition and that the continued prescription of these various drugs was contraindicated.

Plaintiff's expert evidence was largely uncontradicted by any countervailing evidence offered by defendant's experts. It tended to establish that the treatment administered by Bird failed to meet standards of proper medical care and thus was malpractice. The defendant's expert witnesses' testimony was directed primarily toward the issue of proximate cause and argued that the defendant's medical treatment did not cause the decedent's liver disease or resultant death. Defendant's witnesses testified that decedent's alcoholism was an intervening, paramount cause of the fatty liver condition, if indeed, not the sole cause, and that nowhere in the annals of medical history was there any indication that any of the drugs of the type prescribed by Bird had ever caused or been associated with fatty metamorphosis of the liver. Consequently, argued defendant, the prescription of these drugs could not constitute "malpractice" since they were not the "cause" of the decedent's malady.

Plaintiff attempted to demonstrate through the testimony of Dr. Perel, a pharmacologist, that these drugs had an effect upon the chemistry of decedent's body, particularly her brain and liver and were a causal factor in the development of the liver condition. These efforts were frustrated however by the court's refusal to allow the pharmacologist to give his opinion. The court ruled that because Dr. Perel did not have a "medical degree" he was not competent to give a "medical opinion".

Dr. Perel is a clinical pharmacologist and a professor of clinical psychiatry and clinical pharmacology. He is the author of a number of publications in the clinical use of psychotropic agents in the treatment of schizophrenia and depression, and was the director of clinical pharmacology for the Veterans Administration Medical Center in Pittsburgh, Pennsylvania. He holds doctoral and postdoctoral

degrees in chemistry and clinical pharmacology and has had extensive postdoctoral training in physiology. The court accepted him as an expert in pharmacology, which involves the study of drugs, the properties and reactions of drugs and the relation of these properties and reactions to their therapeutic value, including the effect of chemical substances on various organs of the body. However, the court refused to permit him to render an opinion as to the causal relationship, if any, between the chronic ingestion of the drugs prescribed by Dr. Bird and the decedent's brain and liver condition. The court ruled that that question calls for a "medical opinion" and because Dr. Perel is not a licensed medical doctor, he was not competent to give such an opinion.

The determination of the question of whether or not a witness is qualified to testify as an expert in respect to a particular subject lies in the "reasonable discretion [of] the trial court, which discretion when exercised, is not open to review unless in deciding the question the trial court has made a serious mistake or committed an error of law or has abused his discretion." (Richardson, Evidence [10th ed], § 368, p 343; *Meiselman v Crown Hgts. Hosp.*, 285 NY 389.) In *People v Rice* (159 NY 400, 410), the Court of Appeals, in considering whether one not licensed as a "medical doctor" should be permitted to give an expert opinion or a "medical question", observed that:

"[I]f a man be in reality an expert upon any given subject belonging to the domain of medicine, his opinion may be received by the court, although he has not a license to practice medicine. But such testimony should be received with great caution and only after the trial court has become fully satisfied that upon the subject as to which the witness is called for the purpose of giving an opinion, he is fully competent to speak."

Moreover, "[a] witness may testify as an expert if it is shown that he is skilled in the profession or field to which the subject relates, and that such skill was acquired from study, experience, or observation." (*Meiselman v Crown Hgts. Hosp.*, 285 NY 389; *Jones v National Biscuit Co.*, 29 AD2d 1033, 1034; see, also, *Matter of Boyle*, 271 App Div 614.)

Here, where the critical issue for the jury's determination was the effect, if any, upon the organs of the decedent's body of the chronic ingestion of the drugs prescribed by Dr. Bird, the jury was entitled to be able to consider, on that issue, Dr. Perel's opinion, as one trained in the field of pharmacology, a science relating to that very question. Especially so, in view of the testimony of defendant's experts that the only substance known to cause fatty metamorphosis of the liver was alcohol. It was of course, the jury's prerogative to ascribe such weight to such testimony as they deemed appropriate. But at the very least, plaintiff was entitled to have them hear the evidence.

The court's error in refusing to permit this expert testimony was compounded, in our view, by the reading by defendant's counsel, during his summation, from the document prepared by decedent and given to Dr. Bird at her request. This document was highly demeaning of the decedent and could only serve to prejudice the jury against her while at the same time evoking a sympathetic attitude toward the defendant doctor. Moreover, while it may have had some peripheral relevance on the issue of damages, it had no relevance at all to the issue of medical malpractice.

Accordingly, the judgment of the Supreme Court, New York County (GEORGE E. INGELHART, J.), entered on April 30, 1981, should be reversed, on the law and the facts, without costs, and a new trial ordered.

MURPHY, P. J. (dissenting). This is a medical malpractice action brought for wrongful death. Defendant Etta Bird, a psychiatrist, treated the decedent, Gayle Karasik, for a period of 14 months. Prior to her treatment by defendant Bird, the decedent had attempted suicide on three occasions through the use of drugs and alcohol. It was Bird's diagnosis that the decedent was suffering from schizophrenia. During the period of treatment, Bird prescribed 14 different drugs for the decedent; this type of treatment is known as "polypharmacy". The decedent died on May 14, 1974. Both sides agreed that the cause of death was "fatty metamorphosis of the liver" or an enlarged liver.

The case was submitted to the jury upon three questions. The jury found, in answer to the first question, that the defendant did not commit medical malpractice. Therefore,

it was unnecessary for the jury to reach a verdict with regard to the second question (causation) or the third question (damages).

Plaintiff Martin Karasik, the decedent's husband and the administrator of her estate, raised three points for review. First, plaintiff maintains that the verdict was against the weight of the evidence. Upon a motion by a plaintiff to set aside a verdict in a defendant's favor, the motion should not be granted unless the evidence preponderated so greatly in plaintiff's favor that the jury could not have reached its conclusion on any fair interpretation of the evidence. (*Tannenbaum v Mandell,* 51 AD2d 593, mot for lv to app den 39 NY2d 709.) As will be developed below, the evidence did not preponderate in plaintiff's favor in this proceeding. In fact, there was more than ample evidence to support the verdict in defendants' favor.

Based on Bird's own testimony, the jury could have logically concluded that the drugs were correctly prescribed for the treatment of the decedent's schizophrenia. Even if it were assumed that the jury believed that these prescribed drugs could have caused a "fatty metamorphosis of the liver" it does not follow that Bird had committed malpractice in merely prescribing them. The jury may well have believed that the decedent did not follow Bird's instructions in taking those prescribed medications or that decedent improperly took unprescribed drugs and/or alcohol with the prescribed medications.

Alternatively, the jury might well have decided, on the basis of the defendants' expert testimony, that the prescribed medications did not cause the enlarged liver. The plaintiff contends that such a determination would bear only on the second question of causation. However, upon the evidence in this case, the first and second questions are actually different sides of the same issue. The jury, on the evidence presented, could have decided that the prescribed drugs could not under any circumstances cause an inflamed liver. In conjunction with that finding, the jury might have also determined that the excessive imbibition of alcohol caused the decedent's death. In rationally reaching these conclusions, it would necessarily follow that the jury would answer the first question in the negative. In

other words, the jury could reasonably conclude that defendant did not commit malpractice.

Finally, the jury could have justifiably found upon the proof presented that the decedent's recalcitrance was the prime cause of her own death. It is uncontested that Bird continually told the decedent to go for a medical examination but she failed to do so. On these facts, the jury could have understandably found that Bird had given professionally sound advice which was ignored by the decedent. Hence, the jury rendered a verdict in favor of the defendants.

Parenthetically, it should be stressed that none of the experts considered the decedent's obesity to be the cause of her enlarged liver. Thus, any discussion of that condition is not directly relevant to the issues of malpractice or causation. Again, the obesity could have been treated had the decedent taken herself to the proper specialist.

As a second point, the plaintiff asserts that the trial court erroneously prevented Dr. Perel from testifying on the issue of causation. The trial court qualified Dr. Perel as an expert in the field of pharmacology. After an extended colloquy, the trial court permitted Dr. Perel to testify that the prescribed drugs, if taken in excessive dosages, could cause an enlarged liver. However, the trial court would not permit him to testify as to whether those drugs or alcohol caused the enlarged liver in this case.

Plaintiff contends that, even though Dr. Perel was not a physician or a psychiatrist, he should have been permitted to testify on specific causation in this proceeding because of his expert knowledge in the medical field. (*People v Rice*, 159 NY 400, 410.) Upon the evidence in this case, it cannot be said that the trial court abused its discretion, as a matter of law, in ruling against plaintiff on this matter (*Meiselman v Crown Hgts. Hosp.*, 285 NY 389, 398-399). Any testimony by Dr. Perel on the issue of causation would undoubtedly have led to a discussion of the decedent's mental history. Clearly, Dr. Perel could not competently testify as to the decedent's mental history. Therefore, in order to avoid any improper testimony on Dr. Perel's part, his role as an expert was correctly limited to a pharmacological discussion of the drugs and their general effects upon

the liver. In any event, Dr. Perel's testimony was cumulative because plaintiff's other experts had testified on this same subject of specific causation. Hence any error on this ruling was harmless in the context of this protracted trial.

As a last point, the plaintiff raises the collateral argument that the decedent's autobiography was inflammatory and that it prejudiced the jury. This autobiography was read in its entirety during the defense summation. It must be remembered that the parties' experts disagreed on whether the decedent was a schizophrenic or a depressive. As was discussed above, they also disagreed as to whether she should have been treated with "polypharmacy". In order to resolve those and the other principal questions presented, all aspects of the decedent's life became relevant. The autobiography was particularly pertinent since it gave the jury insight into the decedent's interests, motivations, morals, drug abuse, sex life and other phases of her behavior. It is true that the autobiography did contain praise for Bird and disparagement of the plaintiff. Nonetheless, this information was properly admitted in order to give the jury all the data needed for an informed judgment on their part.

For the reasons stated, the judgment of the Supreme Court, New York County (INGLEHART, J.), dismissing the complaint after a jury trial, should be affirmed.

KUPFERMAN, J. (concurring in dissent). I concur in the Presiding Justice's dissent. However, I must differ and agree with the majority on the issue of whether Dr. Perel should have been permitted to testify. Nonetheless, it is my view that the error on this ruling was harmless in the context of this trial.

CARRO and MILONAS, JJ., concur with ALEXANDER, J.; MURPHY, P. J., dissents in an opinion; KUPFERMAN, J., concurs with MURPHY, P. J., in a separate opinion.

Judgment, Supreme Court, New York County, entered on April 30, 1981, reversed, on the law and the facts, without costs and without disbursements, and a new trial ordered.