■ STEVEN B. WEINSTEIN et al., Appellants, v HARLAN R. DAMAN et al., Respondents.—In a malpractice action to recover damages for personal injuries, etc., the plaintiffs appeal from a judgment of the Supreme Court, Nassau County (Robbins, J.), entered May 10, 1985, which, upon granting the motions of the defendants Daman, Cytryn and Bart, made at the close of the trial evidence, to dismiss the complaint as against them, and upon a jury verdict in favor of the defendant Reiss, is in favor of the defendants and against them.

Ordered that the judgment is reversed, on the law, the plaintiff is granted a new trial against the defendants Daman, Bart and Reiss, with costs to abide the event, the action against the defendant Cytryn is severed, and the matter is remitted to Supreme Court, Nassau County, for entry of an appropriate judgment in favor of that defendant.

In November 1976 the plaintiff Steven Weinstein consulted defendant Dr. Cytryn, a general practitioner, in connection with his complaints of a stuffed-up nose. Between June 30, 1977 and September 21, 1977, Mr. Weinstein made several

visits to the defendant Dr. Reiss, an allergist, for treatment of the same condition. On two of his visits to Dr. Reiss's office, he was seen by the defendant Dr. Daman, another allergist, who administered injections to him.

Both Dr. Cytryn and Dr. Reiss made a diagnosis that Mr. Weinstein was suffering from an allergy, a diagnosis in which Dr. Davan concurred. Each of the doctors prescribed medication to treat Mr. Weinstein's symptoms.

In mid-September 1977 Mr. Weinstein began to experience blurry vision and he consulted the defendant Bart, an optometrist, on September 20, 1977. On September 26, 1977, Mr. Weinstein consulted an ophthalmologist after looking in the mirror and observing that his right eyeball appeared to be protruding from its socket. It was eventually discovered that Mr. Weinstein had a pituitary tumor, which was removed by surgery on October 5, and October 20, 1977. After the first operation, he lost the vision in his right eye. Mr. Weinstein and his wife Judith Weinstein then filed suit against the four defendant doctors, the theory of the case being that the defendants had committed malpractice in failing to diagnose the tumor and that the delay in treatment resulting from that failure led to the loss of vision by permitting the tumor to spread through the sphenoid sinus and ethmoid sinus and into the orbit of the eye, where it exerted pressure on the optic nerve. The plaintiffs' case against Dr. Cytryn, Dr. Daman and Bart was dismissed by the court at the close of all of the evidence. Only the case against Dr. Reiss went to the jury, which found in his favor. The plaintiffs have appealed from the judgment in favor of the defendants.

We have determined that there must be a new trial of the plaintiffs' case against Dr. Reiss, Dr. Daman and Bart. With respect to the case against Dr. Reiss, the court erred in granting an application by that defendant to conduct an experiment in order to test the credibility of Mr. Weinstein. During his direct testimony, Mr. Weinstein had remarked that, because of the loss of vision in his right eye, he was unable to see Dr. Reiss's attorney when he rose to make an objection. On the subsequent cross-examination, the attorney challenged this statement and asked the court to permit each juror to sit in the witness chair, cover his or her right eye and determine whether the defense attorney could be seen with the other eye. The court granted the application and instructed the jurors to, in turn, take the witness chair and "look in the direction of whatever".

This procedure was highly prejudicial. The result of an experiment is admissible only if the conditions under which it is conducted are sufficiently similar to those existing at the time in question to make the result achieved by the test relevant to the issue (Richardson, Evidence § 199 [Prince 10th ed]; *see, People v Cohen,* 50 NY2d 908). At bar, as there was no assurance that the vision of each juror was similar to that of Mr. Weinstein and the court took no measures to insure that each juror sat in the same position as had Mr. Weinstein and looked in the same direction, the experiment was clearly improper and its results were inadmissible in evidence.

The court also erred in giving a missing witness charge with respect to certain doctors who had treated Mr. Weinstein at Long Island Jewish Hospital when he was admitted for the surgery to remove his tumor. Since the defendants did not dispute that there was a tumor, the hospital records were admitted into evidence, and the plaintiffs adduced testimony from both the ophthalmologist who had diagnosed the tumor and an expert who had reviewed the records, testimony from the hospital's treating doctors would have been merely cumulative and a missing witness charge was inappropriate *(see, Getlin v St. Vincent's Hosp. & Med. Center,* 117 AD2d 707; *Oswald v Heaney,* 70 AD2d 653). In addition, there was no showing that these doctors were under the control of the plaintiff *(see, Oswald v Heaney, supra).*

The plaintiffs were also prejudiced by a confusing charge on proximate cause, the trial court's failure to charge the jury concerning the parties' contentions, and its failure to relate the evidence to the principles of law charged *(see, Rosenberg v Rixon,* 111 AD2d 910).

The trial court also erred in dismissing the plaintiffs' case against Dr. Daman without submitting it to the jury. Dr. Daman testified at trial that he relied upon the medical records of Dr. Reiss, concurred in the latter doctor's diagnosis that Mr. Weinstein was suffering from an allergy, and administered injection therapy to Mr. Weinstein. Since the plaintiffs' expert allergist, Dr. McGovern, testified that the diagnosis and treatment of allergies without taking X rays of the sinuses constituted malpractice, and there was also testimony that the failure to diagnose the tumor was the proximate cause of Mr. Weinstein's injury, the plaintiffs succeeded in making out a prima facie case against Dr. Daman and the case should not have been dismissed against him *(see, Hylick v Halweil,* 112 AD2d 400).

Similarly, the court should not have dismissed the case against Bart. The plaintiffs examined Bart as an expert witness and he stated that it would be a deviation from accepted standards of medical care for an optometrist to fail to refer a person with Mr. Weinstein's condition to an ophthalmologist immediately. Since Mr. Weinstein testified that no immediate referral was made, a prima facie case was established and the case against Bart should have been submitted to the jury.

The court did not err, however, in dismissing the case against Dr. Cytryn since there was no expert testimony establishing malpractice on his part. The trial court properly sustained objections to the plaintiffs' questions to Dr. McGovern (who was an allergist) concerning the treatment rendered to Mr. Weinstein by Dr. Cytryn (a general practitioner) since the plaintiffs had failed to lay a proper foundation for this testimony by establishing that Dr. McGovern was familiar with the accepted standards of medical care for a general practitioner at the time of Dr. Cytryn's treatment of Mr. Weinstein (see, Richardson, Evidence § 368 [Prince 10th ed]). Brown, J. P., Eiber, Kunzeman and Sullivan, JJ., concur.