AUDREY HOAGLAND et al., Appellants, v IRA KAMP et al., Respondents.

Third Department, March 22, 1990

APPEARANCES OF COUNSEL

*Hines & Dentes (Robert J. Hines* of counsel), for appellants.

*Coulter, Fraser, Ames, Bolton, Bird & Ventre (P. David Twichell* of counsel), for Robert Duthie, respondent.

*MacKenzie Smith Lewis Michell & Hughes (Nancy L. Pontius* and *Charlene E. McGraw* of counsel), for Sheldon Lamm, respondent.

## OPINION OF THE COURT

YESAWICH, JR., J.

Plaintiffs instituted this dental malpractice action alleging that defendants, five general practitioners and an endodontist, all of whom practice in Tompkins County, improperly diagnosed and treated plaintiff Audrey Hoagland's trigeminal neuralgia, a painful nerve disorder commonly known as tic douloureaux. At trial, Supreme Court refused to permit plaintiffs' expert, a board-certified oral and maxillofacial surgeon whose practice is limited to the New York City area, to testify concerning the standard of care for general dentistry. Because plaintiffs offered no other medical support for their allegations, Supreme Court dismissed the complaint at the close of plaintiffs' proof.

In an effort to prove their case, plaintiffs sought to have Dr. Leon Charis, a dental specialist licensed to practice in New York, testify concerning the standard of care of reasonably prudent general dentists practicing in Tompkins County. Alternatively, the doctor was offered as qualified to give opinions

with respect to the standard of care of average members of the profession of general dentistry in the State.

■ Supreme Court rightly concluded that because Charis practices dentistry only in New York City and is unfamiliar with the standard of care to which reasonably prudent Tompkins County dentists should conform, the oft-cited and doggedly obdurate "locality rule" *(see generally, Riley v Wieman,* 137 AD2d 309, 314-315) would be breached were he permitted to testify. The locality rule, premised as it is on such variables as geography, availability of medical facilities, consultants, specialists, equipment, personnel and the like, does not, however, prohibit him from testifying to what we perceive plaintiffs proposed to show; namely, that there is a minimum standard of care that dentists licensed to practice in this State are expected to exercise in diagnosing and treating tic douloureaux, that this standard is uniform throughout the State, and presumably that the treatment furnished in this instance fell below this threshold *(cf., Purtill v Hess,* 111 Ill 2d 229, 246-247, 489 NE2d 867). If, at the time Hoagland was diagnosed and treated, uniform minimum standards of care for the diagnosis and treatment of tic douloureaux existed, Charis' unfamiliarity with dental practice in Tompkins County is irrelevant. Whatever may actually be the standard of care practiced by general dentists in any particular locality in this State, if it is less demanding than the minimum level of skill and expertise which general dental practitioners are required to achieve to attain and maintain licensure in the State, it is unacceptable. If that were not true, spectacular ineptitude could be condoned under the guise of the locality rule. Simply put, certain rudimentary criteria must be met before one can practice dentistry in New York.

■ Nor are we persuaded that Charis is foreclosed from testifying because he is a specialist *(see, Evans v Ohanesian,* 39 Cal App 3d 121, 128, 112 Cal Rptr 236). All that need be demonstrated is that he has knowledge of the standard of care about which he is testifying. That he has such knowledge is readily apparent from his credentials. He graduated from New York University College of Dentistry, 1 of 4 accredited dental schools in this State, and obtained a license to practice all phases of general dentistry in New York. He continued his dental education and became a specialist certified by the American Board of Oral and Maxillofacial Surgeons. For 1 of his 3 years of specialized training, he practiced general den-

tistry in Boston, Massachusetts, during evenings and weekends.

Charis is a member of a multitude of dental associations including the Queens County Dental Association, the Dental Society of the State of New York, the American Dental Association, the New York State Society of Oral and Maxillofacial Surgeons, and the American Association of Oral and Maxillofacial Surgeons. As representative for the New York State Society of Oral and Maxillofacial Surgeons, Charis serves on the New York State Dental Advisory Committee. In this capacity he helps define policies bearing on all aspects of the practice of dentistry as it relates to Federally funded dental care, such as Medicaid, within the State. He also cochairs the New York State Society of Oral and Maxillofacial Surgeon's committee on health plans and legislation. Additionally, he helped found the American College of Oral and Maxillofacial Surgery. Finally, Charis serves as the senior attending oral surgeon for Astoria General Hospital and for five hospitals in New York City comprising the Catholic Medical Center.

Admittedly, Charis currently limits his practice to his specialty. His expertise, however, does not imply that he is unacquainted with the minimal standards of general dentistry. In fact, Charis routinely reviews the work of general practitioners, for a substantial number of patients who have complications arising from general dentistry are referred to him. Moreover, in this State all dentists must first be licensed as generalists before practicing any form of specialized dentistry. To obtain this license, a dentist must graduate from an accredited dental school (the accreditation standards for all four dental schools in New York are the same), and pass a written and a practical examination covering all phases of general dentistry. In sum, Supreme Court was mistaken when it refused to afford Charis the opportunity to testify, for plaintiffs satisfactorily established that the doctor was skilled in the field of dentistry and familiar with the accepted minimum standards of dental care for a general practitioner in New York (compare, Weinstein v Daman, 132 AD2d 547, 550, lv dismissed 70 NY2d 872, 951).

It is incongruous to permit one "already trained in the general area and science of medicine, [to] qualify as an expert in a specialized medical area by study alone" (Richardson, Evidence § 368, at 344 [Prince 10th ed]; see, e.g., Jones v National Biscuit Co., 29 AD2d 1033, 1034) and yet bar a

specialist, necessarily trained in general dentistry, from testifying about minimum general dentistry standards. Defendants' contention that plaintiffs' expert lacks competence because he has not practiced general dentistry for more than 25 years is no impediment *(see, e.g., Bearss v Copley,* 10 NY 93, 95). Criticism of an expert's experience goes not to the admissibility of his testimony, but simply affects the weight the fact finder ascribes to that testimony *(see,* Richardson, Evidence § 368, at 343 [Prince 10th ed]; *see also, e.g., Fuller v Preis,* 35 NY2d 425, 431; *Karasik v Bird,* 98 AD2d 359, 363).

CASEY, J. (dissenting). The locality rule has its roots in *Pike v. Honsinger* (155 NY 201), where the Court of Appeals said that a doctor is required to possess "that reasonable degree of learning and skill * * * ordinarily possessed by physicians and surgeons in the locality where he practices" *(supra,* at 209). It is now firmly established that "in most medical malpractice actions, a plaintiff must prove through expert medical opinion (1) the standard of care in the locality where treatment occurred, (2) that defendant breached that standard of care and (3) that the breach of the standard was the proximate cause of injury" *(Gibson v D'Amico,* 97 AD2d 905, *lv denied* 61 NY2d 603). In *Toth v Community Hosp.* (22 NY2d 255, 262), the court recognized the difference between a general practitioner and a specialist, concluding that since "a physician should use his best judgment and whatever superior knowledge, skill and intelligence he has * * * a specialist may be held liable where a general practitioner may not". In keeping with this two-tiered standard, we have approved the admission of expert testimony by a board-certified specialist to describe the superior knowledge, skill and intelligence that a defendant doctor should have possessed as a board-certified specialist in the same speciality, despite the expert's lack of knowledge of the local norms *(see, Riley v Wieman,* 137 AD2d 309, 315). The same rules are applicable in dental malpractice actions *(see, McGinn v Sellitti,* 150 AD2d 967).

In the case at bar, plaintiffs sought to introduce the testimony of a board-certified specialist for the purpose of establishing the standard of care in the locality where the treatment occurred. None of the defendants, however, is a board-certified specialist. They are five general practitioners and an endodontist.* I am of the view that since a specialist may be

---

* Plaintiffs do not contend that the endodontist should be treated any differently than the general practitioners.

held to a higher standard of care than a general practitioner *(see, Toth v Community Hosp., supra; Riley v Wieman, supra),* the testimony of a specialist may not be used to establish the standard of care required of nonspecialists, particularly where the treatment is outside the scope of the specialty, unless it is established that the expert does in fact have the requisite expertise concerning the knowledge and skill of the average general practitioner. Plaintiffs' expert had not engaged in general practice in more than 25 years and his experience in general practice was limited to one year of nights and weekends when he attended school in Boston, Massachusetts. Although the expert's credentials as a specialist are impressive, noticeably absent is any showing that the expert's specialty involves the same knowledge and skill involved in the general dental treatment provided by defendants or that he was otherwise possessed of the necessary expertise to give an opinion as to the standard of care required of general practitioners. An assumption that he was so qualified because he received a license to practice dentistry some 25 years ago is unwarranted. In my opinion, Supreme Court's judgment should therefore be affirmed. Having so concluded, I do not reach the question of whether the expert, whose expertise was gained in the New York City area, was qualified to testify as to the standard of care in an upstate community.

KANE, J. P., MIKOLL and LEVINE, JJ., concur with YESAWICH, JR., J.; CASEY, J., dissents and votes to affirm in an opinion.

Judgment reversed, on the law, without costs, and matter remitted to the Supreme Court for a new trial.