In the Matter of KARUVATH ENU, Petitioner, v THOMAS SOBOL, as Commissioner of Education of the State of New York, et al., Respondents.

Third Department, November 14, 1991

### APPEARANCES OF COUNSEL

*Thuillez, Ford, Gold & Conolly (Barry A. Gold* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Susan L. Watson* of counsel), for respondents.

*Schiavetti, De Vito, Begos & Nicholson (Kenneth Mauro* of counsel), for Medical Society of the State of New York and others, *amici curiae.*

### OPINION OF THE COURT

CASEY, J.

Based upon the findings and recommendation of a Hearing Panel, as modified during the administrative review process *(see,* Education Law § 6510-a; Public Health Law § 230), respondent Board of Regents determined that petitioner, a urologist, was guilty of professional misconduct in that he had practiced his profession with gross negligence. The gross negligence was found to arise out of petitioner's preoperative misdiagnosis of a mass in the kidney of an 85-year-old patient as renal cell carcinoma and petitioner's continuation of the surgical removal of the kidney after it became clear that the mass was not renal cell carcinoma. The finding of gross

negligence was based largely upon the testimony of a general surgeon who was of the opinion that information available to petitioner prior to the operation suggested that the mass was something other than simple renal cell carcinoma and that petitioner's observation during the early stages of the surgery should have alerted him that the mass was an inoperable malignant lymphoma. In addition to his own testimony, petitioner presented testimony of two other urologists who were of the opinion that petitioner's conduct did not deviate from accepted standards of urological care. Petitioner contends that the Board of Regents erred in relying upon the opinion testimony of a general surgeon to establish that petitioner, a specialist, was guilty of gross negligence in the practice of his specialty.

■ We reject the concept, implied in petitioner's brief and expressed in the brief of the *amici curiae,* that only a specialist practicing in the particular specialty is competent to testify that another specialist departed from accepted practice in the specialty. To qualify as an expert, the witness should be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the opinion rendered is reliable *(Matott v Ward,* 48 NY2d 455, 459). Thus, if a physician possesses the requisite knowledge and expertise to make a determination on the issue presented, he need not be a specialist in the field *(Joswick v Lenox Hill Hosp.,* 161 AD2d 352, 355). The question of whether a physician may testify regarding the standard of accepted medical practice outside the scope of his specialty can be a troublesome one *(compare, Hoagland v Kamp,* 155 AD2d 148, 151-152, *with Weinstein v Daman,* 132 AD2d 547, 550, *lv dismissed* 70 NY2d 872, 951), but appellate courts have rejected claims of error directed at a physician's qualifications to offer an opinion outside the scope of his specialty when the witness's specialty is closely related to the specialty at issue *(e.g., Fuller v Preis,* 35 NY2d 425, 431 [neurologist permitted to give an opinion in the closely related specialty of psychiatry on the issue of whether an accident was the proximate cause of a subsequent suicide]; *Humphrey v Jewish Hosp. & Med. Center,* 172 AD2d 494 [general surgeon not unqualified to render an opinion in the specialty of obstetrics and gynecology]; *Matter of Sang Moon Kim v Ambach,* 68 AD2d 986, 987 [opinion testimony of qualified neurosurgeon at professional misconduct hearing sufficient to permit a finding of gross negligence or gross incompetence of orthopedic surgeon during spinal surgery]).

In this proceeding, it is undisputed that the expert for the Office of Professional Medical Conduct (hereinafter OPMC) is a qualified general surgeon who practices radical surgery, often involving various forms of cancer. It is also undisputed that urologists are surgeons who specialize in diseases of the genitourinary tract. Although petitioner's cross-examination of OPMC's expert raised a question concerning the extent of the expert's training and expertise in the specialized area of diseases of the genitourinary tract, we are of the view that the record conclusively establishes that the expert's practice of general surgery was closely related to the specialty of urology so that the expert was qualified to render an opinion regarding the care rendered by petitioner in the particular medical case under review *(see, Humphrey v Jewish Hosp. & Med. Center, supra; Matter of Sang Moon Kim v Ambach, supra; see also, Fuller v Preis, supra).*

■ Although the criticism of the expert's qualifications was not sufficient to preclude him from rendering an opinion in this case, it remained a factor to be considered by the trier of fact in determining the weight to be accorded to the expert's testimony *(see, Meiselman v Crown Hgts. Hosp., 285 NY 389, 398-399; Richardson, Evidence § 368, at 343 [Prince 10th ed]; 3 Frumer-Biskind, Bender's New York Evidence § 101.01).* In exercising its authority to accept or reject the whole or any part of offered medical testimony, an administrative agency must assess the qualifications of each medical expert *(Matter of Evans v Great E. Lbr. Co., 141 AD2d 937, 938).* There may be cases where it is appropriate to infer that an administrative agency has made the necessary assessment *(see, supra),* but we reject the claim made by respondents at oral argument that this is such a case. The Hearing Panel's findings of fact, which were adopted by the Board of Regents, contain no specific finding that the whole or any part of any particular expert's testimony was rejected or accepted. The findings do not even contain any reference to the existence of conflicting expert medical testimony on the relevant issues. Instead, the findings of fact are prefaced by the following general statement: "Conflicting evidence, if any, was considered and rejected in favor of the cited evidence." Since the issue at the

---

* Because the qualifications of the general surgeon presented by OPMC differed significantly from the qualifications of the urologists presented by petitioner, this is not the ordinary case of conflicting expert opinions, as respondents would have us believe.

administrative proceeding essentially distilled to the question of whether to credit the opinion of OPMC's expert or the diametrically opposite opinions of petitioner's experts, the phrase "if any" in reference to conflicting evidence is inexplicable. Nevertheless, it can be inferred from the findings and conclusions that the testimony of petitioner's experts was rejected and the testimony of OPMC's expert was accepted (*see, Matter of Shermack v Board of Regents*, 64 AD2d 798, 799), but we decline respondents' invitation to speculate that in so doing the Board of Regents actually assessed the qualifications of each expert, particularly in the absence of any mention of those qualifications in the findings.

Since petitioner's professional reputation and license to practice his profession were at stake, we conclude that a finding of gross negligence in petitioner's practice of his specialty based upon the testimony of a physician who practices a closely related specialty, but whose training and expertise in petitioner's specialty have been put in issue, must be accompanied by specific findings which assess the expert's qualifications. Factual findings in an administrative proceeding are necessary to assure the parties that the decision is based on evidence in the record, and the findings must be sufficient to permit intelligent challenge by a party aggrieved and adequate judicial review following the determination (*Matter of Simpson v Wolansky*, 38 NY2d 391, 396). We are of the view that this standard cannot be met in this case in the absence of specific findings on the issue raised by the evidence concerning OPMC's expert's lack of training and expertise in the field of urology, the specialty which petitioner allegedly practiced with gross negligence. For example, the expert conceded that although urologists are surgeons who focus on diseases of the genitourinary tract, his training did not include any specialized area that focused on diseases of the genitourinary tract. He also conceded that he had never performed the type of surgery attempted by petitioner and that he had never been the primary physician in the treatment of a patient with kidney cancer. He last did a work-up on a patient with a renal mass when he was a first-year resident, more than 20 years ago. Since the Board of Regents adopted this expert's testimony without making any finding on the issue raised by this evidence, we are unable to discern whether the decision to credit the testimony of this expert over the conflicting testimony of the two urologists presented

by petitioner was based on evidence in the record, uninfluenced by extralegal issues, and had a rational basis.

Our holding should not be viewed as altering the well-established rule that recognizes the authority of an administrative agency to accept or reject all or any part of an expert's testimony. Rather, when exercising that authority in the circumstances previously described, the Board of Regents must make sufficient findings of fact to enable the reviewing court to determine whether the decision to accept the testimony of an expert whose training and experience have been put in issue was based upon evidence in the record and not upon factors which were outside the record or otherwise insufficient to provide the necessary rational basis. The appropriate remedy is to annul the determination and remit the matter to the Board of Regents for an opportunity to clarify its findings *(see, Matter of Simpson v Wolansky, supra; Matter of Libra v University of State of N. Y.,* 124 AD2d 939, *appeal dismissed* 69 NY2d 933, *lv denied* 70 NY2d 603).

Upon remittal, the Board of Regents should also take into consideration the Court of Appeals' recent explanation that the term "gross negligence" in Education Law § 6509 (2) refers "to an event of some duration occurring at a particular time or place, during which either a single act of negligence of egregious proportions or multiple acts of negligence that cumulatively amount to egregious conduct could constitute gross negligence" *(Matter of Yong-Myun Rho v Ambach,* 74 NY2d 318, 322). This court has said that in this context " 'egregious' " means " 'conspicuously bad' " *(Matter of Spero v Board of Regents,* 158 AD2d 763, 764).

MAHONEY, P. J., WEISS and CREW III, JJ., concur.

Adjudged that the determination is annulled, without costs, and matter remitted to respondents for further proceedings not inconsistent with this court's decision.