■ WILLIAM J. BURNETT et al., Respondents, v RICHARD ZITO et al., Appellants. [676 NYS2d 318] —Peters, J. Appeals (1) from an order of the Supreme Court (Harris, J.), entered April 3, 1997 in Albany County, which accepted certain affidavits submitted by plaintiffs in response to defendants' motion for summary judgment, and (2) from an order of said court, entered March 12, 1997 in Albany County, which denied defendants' motion for summary judgment dismissing the complaint.

In February 1984, plaintiff William J. Burnett (hereinafter plaintiff) was operating a tractor trailer loaded with gasoline which was hit by an automobile driven by defendant Eileen Zito and co-owned by defendant Richard Zito. The collision caused plaintiff's trailer to slide sideways and forward. Unable to bring the truck under control, plaintiff jumped from the moving vehicle.

Plaintiff experienced increased pain over the next few days, causing him to seek medical attention. Despite no initial objective diagnostic findings, he remained out of work for several

weeks due to pain, later returning on a limited basis. While he ultimately resumed a 40-hour work week, he remained unable to resume his typical 50 to 90-hour week as of September 1984. At such time, he was involved in a second head-on collision which indisputably increased his pain and further curtailed his daily routine.

Plaintiff, and his wife derivatively, commenced this personal injury action in 1987. After joinder, defendants moved for summary judgment, challenging the existence of a "serious injury" as defined by Insurance Law § 5102 (d). Plaintiff opposed the motion, contesting the admissibility of defendants' unsworn medical reports. In contravention thereto, plaintiff submitted evidence from his treating physician, Charles Kite, as well as other examining physicians.

Supreme Court allowed defendants' submission of unsworn medical reports from two of plaintiff's physicians who initially treated him following the February 1984 accident since they were now deceased and plaintiff's authorization for release insured their authenticity (see, Tankersley v Szesnat, 235 AD2d 1010, 1012). Therein, they detailed that plaintiff's initial neurological consultation and X-rays were negative and that although he was originally diagnosed with cervical and thoracic subluxation, the diagnosis after the second accident became "[c]ervical IVD syndrome [with] cervical and thoracic subluxations". After finding that defendants had satisfied their burden for purposes of summary judgment and determining in a separate letter order that the subsequent loss of Kite's medical license would not preclude his testimony as an expert in this action, the court found plaintiff to have raised triable issues of fact indicating a permanent disability. Defendants appeal both orders.*

Addressing first plaintiff's proffer and Supreme Court's acceptance of the affidavit of Kite, who began treatment of plaintiff in April 1985 for injuries sustained from both the February 1984 and September 1984 accidents, we find no abuse of discretion. Ample evidence of an inadvertent error as to his medical qualifications coupled with a lack of prejudice to defendants supported the correction of such error through the submission of a supplemental affidavit. Moreover, as Kite was a licensed physician at the time he treated plaintiff, there was no error in the further determination that Kite would be qualified to testify as an expert, tempered only by the weight which such testimony would be given (see, Hoagland v Kamp, 155 AD2d 148, 152).

---

* Upon motion, these appeals were consolidated.

As to the denial of defendants' motion for summary judgment upon their challenge to the establishment of a "serious injury" within the purview of Insurance Law § 5102 (d), we agree that defendants have sustained their burden for the purpose of this motion, thereby shifting the burden to plaintiff to submit " 'competent medical evidence based upon objective medical findings and diagnostic tests' " (*Tankersley v Szesnat*, 235 AD2d 1010, 1012, *supra*, quoting *Eisen v Walter & Samuels*, 215 AD2d 149, 150).

First addressing plaintiff's contentions regarding the permanent consequential and significant limitation categories of Insurance Law § 5102 (d), plaintiff submits his own affidavit detailing his subjective pain and the limitations placed on his daily activities as well as the medical reports of physicians Thomas Couch, Philip Forster, Dominic Belmonte and Kite. Couch found that plaintiff demonstrated sluggish reflexes, concluding that plaintiff suffered from "a mild permanent partial disability", while Forster found that plaintiff "sustained cervical and back strain * * * and also contused his head", with no more "than a moderate partial disability, temporary * * * [which] should continue to improve". In his unsworn statement, Forster contended that "both accidents are responsible for [plaintiff's] present temporary mild-to-moderate partial disability [and] [i]n view of length of time that has elapsed * * * [t]here may be some degree of permanency". Even with such conclusion, Forster noted that he "could not quite make out exactly what was injured on each occasion". Belmonte, after his examination, found subjective complaints with no objective support. In his 1988 report, Belmonte notes that plaintiff was seen in his office on January 26, 1987 for a preemployment physical, which was "essentially unremarkable at that time. It is significant to note that his cervical and lumbosacral spine examinations were completely unremarkable, and there was no evidence of radiculopathy", finding plaintiff qualified to work. Nonetheless, his report notes that "[s]hould there be a finding of permanency based on [subjective] complaints, an equal apportionment between the [September 1984] and [February 1984] accidents would be appropriate".

The medical records and affidavits of Kite, who first examined plaintiff 14 months after the accident and subsequent to plaintiff's second head-on collision, did not cure plaintiff's deficient showing. Although Kite alleged the existence of objective proof of hypalgesia and restricted movements, warranting his recommendation that plaintiff not lift heavy weights or work continuous shifts, Kite assumed, in making such determi-

nation, that plaintiff had hypalgesia in the same location prior to the second accident. Further opining that plaintiff's injury would likely be permanent and that this permanent partial disability limited plaintiff's abilities, Kite concluded that plaintiff sustained a "permanent and significant limitation of use of his cervical and lumbar spine".

These contentions merely parrot the statute in an effort to support plaintiff's allegations of serious injury. Further, although Kite reported a limited range of motion, hypalgesia and weakness, no evidence specifically indicated the extent of plaintiff's limitations as being something other than mild or moderate. Moreover, Kite's conclusion that the cause of plaintiff's disability was the accident in question is speculative since the proffer by defendants of plaintiff's initial X-ray and diagnosis contraindicated the basis upon which Kite's findings were made.

Finally addressing plaintiff's contention that he was curtailed from performing substantially all of his routine activities for 90 of the first 180 days following the accident (see, Insurance Law § 5102 [d]), we find only a self-serving affidavit detailing plaintiff's limitation on household, recreational and work activities, with medical records supporting his claim for only 24 days following the accident. As to the use of Kite's affidavit and medical records to buttress this contention, they have no probative value since Kite treated plaintiff too far after the accident in issue (see, Melino v Lauster, 195 AD2d 653, affd 82 NY2d 828).

Accordingly, we affirm the order entered April 3, 1997 and reverse the order entered March 12, 1997.

White, Carpinello and Graffeo, JJ., concur; Cardona, P. J., not taking part. Ordered that the order entered April 3, 1997 is affirmed, without costs. Ordered that the order entered March 12, 1997 is reversed, on the law, without costs, motion granted, summary judgment awarded to defendants and complaint dismissed.