■ In the Matter of JOHN J. LAMPIDIS, Petitioner, v RICHARD P. MILLS, as Commissioner of Education of the State of New York, et al., Respondents. [759 NYS2d 599] —Cardona, P.J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Education Law § 6510 [5]) to review a determination of respondent Board of Regents which, inter alia, suspended petitioner's license to practice dentistry in New York for two years, with the suspension stayed.

Petitioner is licensed to practice dentistry as a general practitioner with a specialty in periodontics. In October 1993, he was employed at Goldstein-Cohen, D.D.S., P.C., when a new patient, complaining of a toothache, sought treatment. The patient, a 47-year-old heavyset woman, was apprehensive and requested that nitrous oxide be used in conjunction with any dental procedure. Although petitioner conducted an assessment of the patient's medical history, he did not take her pulse or blood pressure prior to administering the nitrous oxide. Approximately 40 minutes into the procedure, petitioner discontinued the administration of nitrous oxide and, at that time, the patient exhibited further anxiety, tried to get out of the dental chair and expressed the need to cough. At that point, petitioner left the patient in the operatory with his assistant in order to go to another room to retrieve an item needed for the procedure. When he returned, that assistant was standing in the hallway and petitioner observed the patient alone, out of the chair and leaning on the counter holding her head. In response to petitioner's inquiry, the patient stated that she was "okay" but felt dizzy and needed air. Petitioner was unable to open the window and accompanied the patient approximately 40 feet down the hall. The patient indicated that she was not ready to continue the procedure. Petitioner left her in the hallway, instructing the patient to either return to him or inform the front desk of her intentions. Several minutes later, petitioner was informed that the patient had collapsed on the stairs leading outside. Petitioner confirmed that 911 had been called and went to the patient. He wiped away the saliva to clear her airway. Petitioner then checked her breathing and pulse. After petitioner put the patient in a supine position and tilted her head, an emergency medical services team arrived and transported her to the hospital where she died.

In 1999, the Office of Professional Discipline (hereinafter OPD) of the Department of Education served petitioner with a notice of hearing and statement of charges alleging two specifications of professional misconduct, namely, practicing dentistry with gross negligence on a particular occasion and practicing

dentistry with gross incompetence (*see* Education Law § 6509 [2]). Following a disciplinary proceeding, the hearing panel of the State Board for Dentistry (hereinafter hearing panel) found petitioner guilty of the gross negligence specification. The hearing panel recommended a stayed suspension for two years and probation for three years. Although the Regents Review Committee recommended dismissal of both specifications, respondent Board of Regents (hereinafter the Board) accepted the hearing panel's findings of fact and penalty recommendations. The Board concluded, based upon a preponderance of the evidence (*see* Education Law § 6510 [3] [c]), that petitioner was guilty of practicing dentistry with gross negligence.

Initially, petitioner challenges the sufficiency of the qualifications of Henry Ernst, an expert testifying on behalf of OPD. Petitioner argues that Stanley Malamed, the expert testifying on his behalf, wrote a well-known handbook on the subject of dental emergencies, while Ernst was not an "expert" on that subject. Accordingly, petitioner contends that Ernst's testimony as to the accepted standards of care and whether there was any deviation therefrom should have been, even if admissible, accorded little weight. Notably, for purposes of admissibility, "all that is required is that the testifying expert possess the requisite skill, training, education, knowledge and experience from which it can be assumed that the opinion rendered is reliable" (*Matter of Enu v Sobol*, 208 AD2d 1123, 1124 [1994]). As to the weight accorded specific expert testimony, that issue is properly resolved in the administrative process (*see Matter of Nehorayoff v Mills*, 95 NY2d 671 [2001]; *Matter of Kole v New York State Educ. Dept.*, 291 AD2d 683 [2002]).

Here, Ernst's qualifications included, inter alia, his licenses in dentistry and conscious sedation, his private practice experience and his teaching experience in general dentistry, which included dental emergency management. Significantly, the Board was not faced with the situation in which a specialist's testimony had to be weighed against that of a nonspecialist (*cf. Matter of Enu v Sobol*, 171 AD2d 302, 305 [1991]). Instead, the record reflects that Ernst and Malamed were retained to give testimony concerning the standard of care in the *general* practice of dentistry, such as the propriety of leaving a patient unattended, permitting a patient to get out of the chair, the proper response of a practitioner to complaints of dizziness, allowing a patient to leave the operatory during treatment, and permitting a patient to leave the office unattended under certain circumstances. Upon this record, the Board could

properly determine that both experts were qualified to offer opinions as to emergencies in general dentistry and it had the responsibility to determine which expert to credit since their opinion testimony differed.

Turning to the merits, we conclude that the Board's determination is supported by substantial evidence (*see Matter of Kirschner v Mills*, 274 AD2d 786, 790 [2000]). To sustain a finding of gross negligence in a professional misconduct proceeding, it must be determined that either a particular act of negligence was of "egregious proportions or [that] multiple acts of negligence * * * cumulatively amount to egregious conduct" (*Matter of Yong-Myun Rho v Ambach*, 74 NY2d 318, 322 [1989]; *see Matter of Berger v Board of Regents of State of N.Y.*, 178 AD2d 748, 751 [1991], *appeal dismissed* 79 NY2d 977 [1992], *lv denied* 80 NY2d 918 [1992], *cert denied* 507 US 1018 [1993]; *Matter of Spero v Board of Regents of Univ. of State of N.Y.*, 158 AD2d 763, 764 [1990]). In this case, Ernst offered his medical opinion that petitioner's actions would be a significant deviation from the standard of care of a professional faced with the circumstances in which petitioner treated this woman, i.e., a heavyset patient under anaesthesia who is experiencing dizziness, coughing, a need for air, and for whom no vital signs had been taken and who is allowed to leave without supervision. Although Malamed testified that petitioner's actions were sufficient, he did confirm that the symptoms displayed by the patient, especially her dizziness, justified further inquiry as to the possible cause. In any event, when evidence is adduced at a hearing that supports egregious conduct, contrary medical evidence will merely present a credibility issue that is within the province of the Board to resolve (*see Matter of Wilkins v New York State Dept. of Health*, 289 AD2d 634, 635 [2001], *lv denied* 97 NY2d 612 [2002]; *Matter of Loffredo v Sobol*, 195 AD2d 757, 759-760 [1993], *lv denied* 82 NY2d 658 [1993]). Under the circumstances, we cannot say that the Board erred in concluding that petitioner's conduct met the standard of gross negligence in this instance (*see Matter of Spero v Board of Regents of Univ. of State of N.Y., supra* at 764). Since there is a rational basis for the determination herein, this Court must not substitute its judgment for that of the Board (*see Matter of Nehorayoff v Mills, supra* at 675).

Finally, we have reviewed petitioner's remaining claims, including his challenge to the sufficiency of the Board's findings, and find them to be unpersuasive.

Mercure, Crew III, Carpinello and Rose, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.