■ MICHELE WETZLER et al., as Parents and Natural Guardians of NICHOLAS C. WETZLER, an Infant, Respondents, v SISTERS OF CHARITY HOSPITAL et al., Appellants. [794 NYS2d 540]—

Appeals from a judgment and order (one paper) of the Supreme Court, Erie County (Peter J. Notaro, J.), entered December 17, 2003 in a medical malpractice action. The judgment and order was entered upon a jury verdict in favor of plaintiffs and against defendants.

It is hereby ordered that the judgment and order so appealed from be and the same hereby is unanimously reversed on the law without costs, the posttrial motions are granted, the motion for a directed verdict is denied, the amended answer and answer are reinstated, and a new trial is granted in accordance with the following memorandum: Plaintiffs commenced this medical malpractice action seeking damages for a brain injury allegedly sustained by their son during the course of and immediately following his premature birth on March 7, 1986. At trial, plaintiffs moved at the close of all the evidence for a directed verdict on liability pursuant to CPLR 4401. Supreme Court sua sponte struck the amended answer of defendant Sisters of Charity Hospital (Sisters) and the answer of defendant Gaurang S. Sheth, M.D. as a sanction for the spoliation of evidence, granted plaintiffs' motion for a directed verdict on liability as a result of that sanction, and submitted the case to the jury on the issue of damages. The jury rendered a verdict awarding plaintiffs' son

$1.5 million for past pain and suffering, $4 million for future pain and suffering, and $2 million for impairment of earning ability. The court denied defendants' respective posttrial motions to set aside the directed verdict on liability and the jury's verdict on damages and for a new trial or, alternatively, for an order reducing the award of damages.

We agree with defendants that the court erred in striking their respective answers and granting plaintiffs' motion for a directed verdict on liability as a spoliation sanction, and thus we agree with defendants that they are entitled to a new trial. The missing evidence consists of the second of three x-rays taken during the three-hour course of Dr. Sheth's care of plaintiffs' son immediately following his birth. Sisters failed to produce that x-ray in furnishing plaintiffs with a copy of its records in response to discovery demands, and also failed to produce the x-ray in response to plaintiffs' trial subpoena of the hospital records. A party asserting that it is aggrieved by the spoliation of evidence may seek sanctions either pursuant to CPLR 3126 or on an independent, per se, basis (see *MetLife Auto & Home v Joe Basil Chevrolet*, 1 NY3d 478, 482-483 [2004]). Here, however, plaintiffs sought no spoliation sanction on either basis; rather, their attorney moved for a directed verdict on liability on the merits, mentioning as part of his argument on the merits that the x-ray was "missing," that there was no "reasonable explanation" for the failure to produce it, and that "[t]his is spoliation of evidence." The court thus erred in sua sponte striking defendants' respective answers, and we conclude in any event that the court would have erred in doing so even if a timely motion seeking that sanction had been made.

It is well established that the sanction of striking a pleading for nondisclosure pursuant to CPLR 3126 (3) "should be granted only where it is conclusively shown that the discovery default was deliberate or contumacious" (*Gadley v U.S. Sugar Co.*, 259 AD2d 1041, 1042 [1999]; see *Osinski v Taefi*, 13 AD3d 1205, 1206 [2004]; *Netti v Auburn Enlarged City School Dist.*, 309 AD2d 1143 [2003]). No such showing was made here. While spoliation sanctions may be imposed even where the evidence was lost or destroyed as the result of negligence (see *Iannucci v Rose*, 8 AD3d 437, 438 [2004]; *DiDomenico v C & S Aeromatik Supplies*, 252 AD2d 41, 43 [1998]), a sanction less severe than the striking of a pleading "is appropriate where the missing evidence does not deprive the moving party of the ability to establish his or her defense or case" (*Iannucci*, 8 AD3d at 438; see *Metropolitan N.Y. Coordinating Council on Jewish Poverty v*

*FGP Bush Term.*, 1 AD3d 168 [2003]; *Tawedros v St. Vincent's Hosp. of N.Y.*, 281 AD2d 184 [2001]). Here, plaintiffs established a prima facie case and, indeed, moved for a directed verdict on liability based on the merits of that case, and thus plaintiffs did not contend that the spoliation of evidence deprived them of their ability to establish their case. We therefore conclude that the court erred in striking defendants' respective answers and instead should have considered giving an adverse inference charge to the jury (*see* PJI3d 1:77 [2005]; *Metropolitan N.Y. Coordinating Council on Jewish Poverty*, 1 AD3d 168 [2003]; *Tawedros*, 281 AD2d 184 [2001]). Further, because the record is replete with issues of fact concerning whether Dr. Sheth was negligent and, if so, whether such negligence was a proximate cause of injury to plaintiffs' son, the court erred in granting plaintiffs' motion for a directed verdict on liability on the merits with respect to Dr. Sheth and thus, with respect to Sisters, whose liability is vicarious only, as well (*see generally Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]; *Prucnal v DNG Acquisition Group*, 5 AD3d 1005, 1006 [2004]).

Contrary to defendants' contentions, the court did not abuse its discretion in allowing the expert opinion testimony of a pediatric neurologist (*see Fuller v Preis*, 35 NY2d 425, 431 [1974]; *Matter of Enu v Sobol*, 171 AD2d 302, 304 [1991]; *see generally Woodhouse v Bombardier Motor Corp. of Am.*, 5 AD3d 1029, 1030 [2004]), nor did the court err in precluding defendants from raising for the first time at trial the immaterial contention that the premature birth of plaintiffs' son resulted from smoking by plaintiff mother during her pregnancy. We agree with defendants, however, that the court applied an erroneous discount rate in determining the present value of the structured judgment. The court should have followed CPLR 5031 (e) by using the rate in effect for the 10-year United States Treasury Bond for the 10-year payment period for the pain and suffering awards and a yearly-weighted average rate based on the rate for the 10-year United States Treasury Bond for the first 20 years and that rate plus two percentage points for the 17 additional years for the 37-year payment period for the impairment of earning ability award. We therefore reverse the judgment and order and grant a new trial before a different justice. Defendants' remaining contentions are either unpreserved for our review or are without merit. Present—Green, J.P., Hurlbutt, Kehoe, Smith and Hayes, JJ.